**Robert W. MORGAN**

v.

**Richard C. PAINE, Jr., et al.**

Supreme Judicial Court of Maine.

Nov. 21, 1973.

**180**

Collins & Crandall, by Wayne R. Crandall, Rockland, for plaintiff.

Ranger & McTeague, by Orville T. Ranger, Brunswick, for defendants.

Before DUFRESNE, C. J., and WEATHERBEE, POMEROY, WERNICK and ARCHIBALD, JJ.

POMEROY, Justice.

Defendant Richard Paine gave three checks totaling $58,024 to Robert Morgan. The checks were dishonored. This action resulted.

By his counterclaim, the defendant sought to recover the value of certain antique automobiles, allegedly converted and sold by plaintiff, who had been storing them, without notice of sale or an accounting of the proceeds to defendant, the owner of the automobiles.

By agreement plaintiff's claim was submitted to the Court. The Court found for plaintiff and entered judgment in the amount of $58,024.

Defendant's counterclaim was submitted to the jury, which also found for plaintiff.

The case is before us on defendant's appeal from judgment on both the claim and counterclaim.

For reasons which will appear, we sustain the appeal and remand for a new trial.

The parties were engaged in a business relationship under which plaintiff, over a period of nearly four years, acted as a broker-agent for defendant and the "Seal Cove Auto Museum" in Seal Cove, Maine.

Defendant was president and owner of the museum.

Under the arrangement, carried out largely on an informal, oral basis, plaintiff located and purchased antique automobiles which he sold to defendant, who subsequently exhibited them in the "automobile museum."

Defendant preferred to receive the automobiles in "running condition," and for this reason plaintiff, an expert mechanic, on numerous occasions repaired and restored the automobiles before delivery.

In view of the conflicting positions to which the parties adhere, the particular financial dealings giving rise to this suit remain ill-defined, even after the probing and sifting of the trial.

Our decision here, however, rests upon aspects of the trial not directly related to the transactions and resulting liabilities. We consider it sufficient, then, to trace the differences in the parties' interpretations of their financial disputes only to the extent they are germane to this appeal.

Plaintiff and defendant agree that in May, 1967, plaintiff sold and delivered to defendant four antique cars, which defendant paid for with two promissory notes, each for $61,900. One of these, a 60-day note, was paid in full and is not at issue in this action.

The parties disagree on the history of the second note.

Plaintiff claimed that it was never paid.

Defendant, on the other hand, claimed that the second note was replaced by a third note, which he declined to pay (by dishonoring the three checks underlying plaintiff's claim) because plaintiff had failed to return the autos held as collateral on the second note, and in fact converted and sold them to his own profit.

Plaintiff, in turn, declared that the alleged third note, rather than substituting for the second note, represented defendant's debt to plaintiff on an "open account" for labor, auto parts, travel expenses and other costs connected with the ongoing enterprise.

According to plaintiff, the three dishonored checks were unrelated to the second note or the transaction which that note represented, and his sale of the collateral, which he admits, was intended to reduce the open account, in addition to satisfying the alleged default on the second note.

To support his claims that defendant owed him on the open account (and thus to defend himself against the counterclaim for conversion of the collateral), plaintiff produced a typewritten "summary" of the account. This detailed reckoning of facts and figures was admitted into evidence over defendant's objection.

Defendant flatly denied the existence of any account of any nature.

As part of his counterclaim for the allegedly improper sale of the collateral, defendant charged that plaintiff had converted two other cars, from a so-called "Pittsburgh collection." This collection totaled four cars, all of which defendant claimed to have purchased from plaintiff for $27,500.

At trial, defendant introduced into evidence a check in the amount of $13,750, representing one-half of the purchase price of the "Pittsburgh" cars. A second check in the amount of $14,000 was excluded by the Court, over defendant's protestations that the check represented the second half of the $27,500 purchase price, despite the $250 discrepancy between it and the other check.

Defendant advances several arguments in support of his motion for a new trial. We find it necessary to address only two of those arguments in order to sustain our conclusion that a new trial is warranted.

## I. *The Open Account*

One of the salient features of this case is the conspicuous lack of regular, accurate records of the dealings between the parties, which involved sums in the area of two million dollars over a period of years.

Such a lack of records might have been no more than a minor hindrance in another case.

It was a critical deficiency here, however, where oral testimony at trial ranged over such specific matters as the sequence of checks and promissory notes, the value and identity of numerous exotic antique automobiles, the timing and nature of multi-faceted negotiations, the interstate transport of automobiles, and questions of their ownership.

Adding to the difficulties of the Court and the jury were the abundant conflicts between the parties' respective versions of events.

In an effort to clarify certain of the missing details of the case, plaintiff produced the "summary" noted above, which purported to verify the existence of the open account owed to plaintiff by defendant. Included in the six-page document were such items as parts, labor, travel expenses, commissions, and "miscellaneous" charges against defendant.

Dates, hours of work, and rates per hour for plaintiff's services were not shown.

According to plaintiff, the total charges in the open account accumulated incident to his restoration of automobiles prior to delivery to defendant. By plaintiff's view, the charges were separate from the purchase price defendant would pay for each vehicle.

Defendant testified that any such expenses of restoration were *included* in the price of each auto.

At trial, both defense counsel and the Court conducted extensive inquiry into the manner of plaintiff's preparation of the summary of the open account. As a result of this inquiry, it became apparent that the summary had been drawn by plaintiff, with the possible assistance of his attorney, based either upon certain "notes" that plaintiff claimed to have kept, upon his "recollections," or upon both.

When asked if he could produce contemporaneous records, plaintiff replied that any such records, which he had kept in a "fruit cake box," were destroyed in a fire in his office.

 Despite the patent deficiencies in plaintiff's summary, the presiding Justice permitted its admission into evidence, over objection.[1]

---

1. It is unclear upon what theory the presiding Justice admitted the summary. There was no unequivocal determination that any original records ever existed, that they were in fact lost or destroyed, or that proper efforts were made to produce or account for them. Had the Court so ruled, we would be bound to regard the determination as conclusive, absent an abuse of discretion. St. Croix Co. v. Seacoast Canning Co., 114 Me. 521, 96 A. 1059 (1916).

On one hand, the Court appeared to conclude that no prior records had been compiled. In discussing defendant's objection to admission of the open account, the presiding Justice observed that:

"Unfortunately, these two gentlemen kept no records that help us very much. And we have to rely on their respective memories. . . . .

"And the jury are going to have to determine which of their testimony is worthy of belief. I am not suggesting that either one are fabricating. But they don't have enough —they did not keep business-like records in connection with these transactions. And there is no way of submitting this case for a determination by the jury than to have them testify according to their best recollection. And this I am admitting because it is in substance what Mr. Morgan, at least, says is his best recollection of what constituted what he claims to be the open account."

On the other hand, by describing the summary as an *exception* to the best evidence rule, the presiding Justice implied the prior existence of valid, original evidence which would have been independently admissible had it been produced:

"THE COURT: The Court relies upon a solid legal principle that in connection with evidence where the best evidence is not available, what evidence is let in by the Court is discretionary by the Court unless there is abuse of that discretion.

"Counsel for defendant: Well, your Honor, may I say for the record that in view of Miss or Mrs. Lopat's [plaintiff's bookkeeper] testimony that she kept very few records and that Mr. Morgan was a meager bookkeeper. And that she never sent a bill out on the so-called open account to Mr. Paine. That an admission of this would be in fact an abuse of discretion because he never had any record on which to base his memory.

"THE COURT: Well, he did have. He said he had some back up papers that he threw away, or didn't keep. . . . ."

Finally, the Court may have regarded the summary to be a form of "past recollection recorded" (see Note 6 *infra*):

"THE COURT: Now the fact that the account—the fact that the account is not— is made up from work sheets which are unavailable does not make his testimony inadmissible. He can refresh his recollection

Defendant charges that admission of the open account into evidence was error.

We agree.

In reaching this conclusion, we are not concerned with the validity of the information contained in the summary of the account. Nor have we inquired into plaintiff's *bona fides* in preparing and introducing it.

Rather, we are guided by basic principles of evidence, under none of which would the open account qualify for admission.

It is clear that the summary of the account was prepared long after the passing of the events it purports to record. It is equally clear that the summary was not a

carbon, photostat, or electronically reproduced copy of any original.[2]

We are further convinced, from a careful review of the testimony, that the summary, in the form in which it was admitted, did not exist prior to the initiation of this litigation.

■ Neither case law nor the relevant statute, 16 M.R.S.A. 356,[3] supports admission of the summary as a "business record," "shop-book," "regular entry" or any other hearsay rule exception of that genre.[4]

While liberalizing to some extent the common law "shop-book rule,"[5] Section 356 retained the minimum requirements

---

from these documents. The weight to be given to it, however, is for the jury to determine. A person entitled to testify from memory and to refresh his memory from documents. The fact that—your worksheets are not available? There [sic] are gone?"

"WITNESS: Yes, sir.

"THE COURT: That simply goes for the jury to determine what weight they are going to give to his memory, if any. . . . ."

2. See 16 M.R.S.A. 456.

3. Section 356 was first enacted as Ch. 59, P.L.1933. The wording of the original statute is retained in the current version:

"An entry in an account kept in a book or by a card system or by any other system of keeping accounts shall not be inadmissible in any civil proceeding as evidence of the facts therein stated because it is transcribed or because it is hearsay or self-serving, if the court finds that the entry was made in good faith in the regular course of business and before the beginning of the civil proceeding aforesaid. The Court in its discretion, before admitting such entry in evidence, may, to such extent as it deems practicable or desirable but to no greater extent than the law required before June 30, 1933, require the party offering the same to produce and offer in evidence the original entry, writing, document or account from which the entry offered or the facts therein stated were transcribed or taken, and to call as his witness any person who made the entry offered or the original or any other entry, writing, document or ac-

count from which the entry offered or the facts therein stated were transcribed or taken or who has personal knowledge of the facts stated in the entry offered."

4. We are compelled to reject plaintiff's argument that the hearsay rule is not applicable here since, as he claims, the summary was introduced only for the purpose of showing the existence of the open account, rather than for establishing the correctness of the summary's contents. Plaintiff's sole defense to co-defendant's counterclaim was his reliance on the precise figures in the summary as showing a debt to which he properly applied the proceeds of his sale of the collateral on the promissory note. Bald proof of the *existence* of the open account would be meaningless in this factual context, and we are convinced that introduction of the summary into evidence had both the purpose, and effect, of asserting the truthfulness of the facts and figures therein. As such, the hearsay rule applies.

5. "At the common law under the 'shop book rule,' a book of accounts showing debits and credits between the parties to the suit, was admissible as bearing upon the question of proof of delivery of goods sold or the performance of services rendered as charged in the shopkeeper's books, which, supported by the oath of the party presenting the books, or some one in his behalf, was admissible, if the person making the entries was dead, insane, unable to be present, or beyond the jurisdiction. Otherwise, the delivery or performance, must be proved by one cognizant of the facts." Hunter v. Totman, 146 Me. 259, 80 A.2d 401, 404 (1951).

that the record be "[A]n entry in an account kept in a book or by a card system or by any other system of keeping accounts," that it be made in good faith, in "the regular course of business . . . before the beginning of the civil proceeding."

In construing the statute, we have held that it

" . . . does not apply to entries in a book, or entries in a card or other system, which are simply memoranda made for the convenience or purposes of the one who made them. Entries that cannot fairly be considered as an 'account' are not admissible in evidence, except as has been previously permitted under certain circumstances, to refresh recollection or as statements against interest, without supporting proof from those who had personal knowledge of the facts." Hunter v. Totman, Note 5, supra, 80 A.2d at 406; Rodrique v. Letendre, 158 Me. 375, 184 A.2d 777 (1962).

■ By his testimony at trial, plaintiff might be said to have provided "supporting proof" of the contents of the open account. We may also assume that he had "personal knowledge" of the facts he alleged. His testimony, however, cannot alone justify admission of the account, since it failed to meet the other requirements of the statute.

■ For the same reason, admissibility does not follow merely because defense counsel had the opportunity to cross-examine plaintiff, the proponent of the open account, as to its contents. In fact, plaintiff's presence in court, his detailed testimony, and his claim that he was able to recall with absolute specificity the transactions in question, militate *against,* rather than for admission of the dubious summary sheet.[6]

Plaintiff contends that the open account was properly admitted under the rule of Penobscot Boom Corp. v. Lamson et al, 16 Me. 224 (1839), which provides that:

" . . . if a book or document be called for by a notice to produce it, and it be produced, the mere notice does not make it evidence; but if the party giving the notice, takes and inspects it, he takes it as testimony, and it may be used, if material to the issue." 16 Me. 224, 233.

At trial, defense counsel questioned plaintiff on the open account, asked that he be given the summary, received it, and then continued questioning while referring to it. As plaintiff correctly points out, all of this occurred prior to any other mention of the open account at trial, and prior to plaintiff's introduction of the account into evidence.

As noted in Blake v. Russ, 33 Me. 360 (1851), the *Penobscot Boom* case repre-

---

6. Although the parties have not addressed the issue, we are mindful that in circumstances not entirely dissimilar to those presented here, documents may become admissible under the so-called "past recollection recorded" principle. Under this principle, the contents of the document may be used as evidence " . . . when a witness is unable to achieve a present memory (efforts to revive it having been exhausted) . . .," and when " . . . the witness states as his *present memory* that: (1) the contents of the document are a record of matters in fact previously known to, and remembered by, him; (2) the record had been previously made, or seen, by him, . . . at a time when his memory of the matters was *then* fresh (the time when the record was made, or seen—as contemporaneous with or shortly after the occurrence of the events—being important corroborative evidence of the freshness of his memory but not itself an independently necessary element, or criterion, of admissibility) ; and (3) at that past time the record was *then* remembered to be an accurate record of the matters described, . . . . " Cope v. Sevigny, Me., 289 A.2d 682, 687–688 (1972).

These criteria have not been met here. Nor are we able to say that, as required when evidence is admitted as "past recollection recorded," plaintiff has satisfactorily accounted for his failure to produce his original notes and records, if any, thus avoiding the bar of the best evidence rule. *Id.* at 688.

sented this State's adoption of the "English rule" on the particular evidentiary point.

In Merrill v. Merrill, 67 Me. 70 (1877), the rule was applied to admit a "book of accounts" which the defendant received and examined in the courtroom, after previously serving timely notice on the plaintiff to produce the book, and after having "called" for it during trial.

In its most stringent application, the "English rule" has operated to permit admission of evidence when the evidence was called for and examined at trial by the opposing party, even when such evidence would have been incompetent if it had *not* been called for and examined, and even if, as in the instant case, no notice to produce the document was given before the trial. Leonard v. Taylor, 315 Mass. 580, 53 N.E. 2d 705 (1944).

We are now called upon to consider the vitality and wisdom of the rule in light of what we regard to be the more enlightened discovery rules of our modern practice,[7] and ". . . the ideal of a lawsuit as an instrument for ascertaining the true facts." Field, McKusick & Wroth, Maine Civil Practice, Sec. 34.6 (1970).

Adding its voice to the severe criticism by Wigmore,[8] the Second Circuit rejected the English rule in Hoffman v. Palmer, 129 F.2d 976 (2 Cir. 1942), affd. 318 U.S. 109, 63 S.Ct. 477, 87 L.Ed. 645, rehearing den. 318 U.S. 800, 63 S.Ct. 757, 87 L.Ed. 1163 (1945). Writing for the Court, Judge Frank placed the rule in historical perspective, and stated in words which we find compelling, the reasons for its demise:

"It grew up as a branch of what was once a 'fixed principle' of the common law 'that a party was to be kept in the dark as to the tenor of evidence in his opponent's possession.' Several explanations of that 'principle' have been given. It is said that it stems from the 'sporting theory of justice,' according to which a trial is regarded not as a means of ascertaining the true facts of the case but as a game of wits between opposing counsel. Another explanation is that the 'principle' was founded on the belief that to surrender one's evidence before its disclosure at the trial would enable an unscrupulous adversary to fabricate counter-evidence. These explanations—like most efforts to explain habits and customs—are, probably, alone or together, only partially correct.

. . . .

"At any rate, the old 'fixed principle' of keeping the opponent in the dark as to the tenor of the evidence in one's possession is now out of date. The appendant rule here in question is equally so. It is as anachronistic as the buttons on the sleeve of a man's coat; but such a legal rule is more important than coat-sleeve buttons. As it cannot be reconciled with the liberality as to depositions and discovery contained in the new Rules [Federal Rules of Civil Procedure], we reject it." (Footnotes omitted) 129 F.2d 976, 996, 997.

■ We likewise reject the rule, and to the extent that it is embodied in Penobscot Boom Corp. v. Lamson et al, Blake v. Russ, and Merrill v. Merrill, those cases are now overruled. Plaintiff, therefore, takes nothing by his claim that the cases support admission of the open account into evidence.

■ We are left with the question whether erroneous admission of the open account is harmless error.

Although plaintiff also testified orally on the contents of the open account, its reduction to writing imparted to the figures and alleged facts an aura of veracity and accuracy not normally attached to spoken words.[9]

7. M.R.C.P. 34.

8. 7 Wigmore, Evidence, Sec. 2125 (3d ed. 1940).

9. We are not here deciding that a written memorandum properly received in evidence, the contents of which are admissible as "past recollection recorded," can never go to the

As we have already noted, the factual dispute over the existence and nature of the open account goes to the very heart of this case. Certainly, given the centrality of the issue, the production by one party of a specific, written record would likely influence the minds of the jurors, however subtly or subconsciously, and notwithstanding the questionable means of the record's formulation. By admission of the account into evidence, plaintiff had a great deal to gain, and defendant, a great deal to lose.

We accordingly find that admission of the open account was "inconsistent with substantial justice," and therefore not cognizable as harmless error. Rule 61, M.R.C.P.

## II. *Exclusion of the $14,000 check*

Defendant's check for $14,000, which he claimed was half payment on the "Pittsburgh cars," was excluded by the Court after a lengthy colloquy dealing with the fact that half payment, technically, would be $13,750, rather than $14,000.

Obviously dissatisfied with defendant's explanation of the $250 discrepancy ("My answer is that it is much easier for me to write checks without odd numbers"), the Court rested its exclusion of the check on the best evidence rule:

"THE COURT: Your [defendant's] exception is noted. We have to go by the best evidence rule. We can't take secondary evidence. The witness has testified that he owned some cars in Pittsburgh.

"COUNSEL: Yes, your Honor.

"THE COURT: And he has enumerated them.

"COUNSEL: Yes, your Honor.

"THE COURT: Now, if he doesn't have any more evidence than a check, which he isn't quite sure about, I can't let it in, because there must be better evidence."

Without reaching the wholly distinct question of whether or not the check demonstrated satisfaction of defendant's obligation on the "Pittsburgh cars," we find that the instrument itself should have been admitted, and that its exclusion by the Court was error.

We are aware that the presiding Justice is vested with broad discretion in the disposition of evidentiary matters:

". . . the admissibility into evidence of an object or article which testimony tends to make relevant as an evidentiary exhibit in the nature of 'demonstrative' or 'real' evidence, lies, essentially, in the discretion of the presiding Justice. (Citations and footnotes omitted).

"While such discretion should generally be exercised liberally to admit relevant 'demonstrative' or 'real' evidence which tends to have probative value, in accordance with the general basic principle favoring the admissibility of evidence of probative force, there remains a large discretion invested in the presiding Justice to evaluate whether the probative benefits of allowing an object or article into evidence as an exhibit are fundamentally minimal or trivial or, even if substantial, are nevertheless overridden by other extraneous non-probative factors." Cope v. Sevigny, Note 6 supra, 289 A.2d at 689.

■ The discretion is not limitless, however, and we find that it was abused here,

jury as an exhibit. See Bendett v. Bendett, 315 Mass. 59, 52 N.E.2d 2 (1943); Fisher v. Schwartz, 333 Mass. 265, 130 N.E.2d 575 (1955) (Bendett disapproved). We find here only that the "summary" of the open account was *not* admissible as "past recollection recorded," and that its erroneous admission was not harmless, since the summary " . . .

might have some inherent evidential weight independently of its adoption by the witness as the embodiment of his testimony," and plaintiff should not " . . . be entitled to have that weight thrown into the scale, on the merits of the case, unless the writing should be admissible on some other ground." *Bendett*, supra, 52 N.E.2d at 6.

where the evidence excluded bore a sufficient relationship to the fact to be proven to distinguish its "probative benefits" from those which are "minimal or trivial." Nor are there "other extraneous non-probative factors" upon which the presiding Justice could have justifiably determined to exclude the check.

As we have already noted, the presiding Justice's primary concern seemed to focus upon the requirements of the best evidence rule.

The best evidence rule goes only to the competency of evidence, and not to its relevancy, materiality, or weight, Stevens v. Minneapolis Fire Dept. Relief Association, 219 Minn. 276, 17 N.W.2d 642 (1945); Buffalo Insurance Co. v. United Parking Stations, Inc., 277 Minn. 134, 152 N.W.2d 81 (1967), and requires only that evidence be excluded which, considering its own character and the nature of the transaction, raises an inference that there is obtainable other evidence more nearly original in its source. 32A C.J.S. Evidence § 778, and appropriate cases cited in n. 41.

It is a logical corollary to this aspect of the best evidence rule that primary or original evidence shall not be excluded merely because there might have been introduced *other* primary or original evidence which is more conclusive or corroborative of the fact which the evidence is intended to support. Masse v. Quartucci, 170 Pa.Super. 234, 85 A.2d 690 (1952).

There could have been no "better" evidence that a check was given (for whatever purpose) than the check itself. What the check represented, or proved, if anything, should properly have been left to the jury, since the apparent defect in the check's probative value, *viz.*, the $250 difference between the check's face amount and the debt it allegedly paid, went to the weight, rather than the admissibility of the evidence.

Since the weight to be given the proffered evidence was for the jury, its exclusion constituted error.

The entry must be,

Appeal sustained.

Case remanded for new trial.

WEBBER, J., sat at argument but retired before this opinion was adopted.

All Justices concurring.