**NORTHEAST BANK & TRUST CO.**

v.

**Joseph L. SOLEY and Laite-Soley
Enterprises.**

Supreme Judicial Court of Maine.

Argued March 9, 1984.

Decided Sept. 5, 1984.

Vafiades, Brountas & Kominsky, Jeffrey L. Hjelm (orally), Marvin H. Glazier, Bangor, for plaintiff.

Collins, Crandall & Hanscom, P.A., Wayne R. Crandall (orally), Rockland, for defendants.

Before McKUSICK, C.J., ROBERTS, VIOLETTE, WATHEN and GLASSMAN, JJ., and DUFRESNE, A.R.J.

DUFRESNE, Active Retired Justice.

This appeal draws in question the scope of the business records exception to the hearsay rule. M.R.Evid. 803(6).

The plaintiff, Northeast Bank & Trust Co., brought an action in Superior Court (Penobscot County) on a promissory note executed in its favor by the defendants, Gilbert C. Laite, Joseph L. Soley, and Laite-Soley Enterprises.[1] After a jury-waived trial held on July 19, 1983, the Superior Court found for the plaintiff bank, awarding as damages the principal amount of the note, the interest accrued thereon, and attorney fees. On appeal, the defendants contest only that part of the judgment awarding the plaintiff $10,721.59 in interest accrued on the note. The defendants argue that the presiding justice erroneously admitted in evidence an interest rate schedule and an adding machine tape offered by the plaintiff to prove the amount of interest due on the note. We find no reversible error, and, therefore, deny the appeal.

The promissory note at issue in this case provides for interest at "1/2% over the First National Bank of Boston's floating prime rate in effect from time to time with such changes effective immediately."

At trial, a vice-president of the plaintiff bank, Sterling G. Williams, provided testimony concerning the amount of interest owed on the note. On direct examination Mr. Williams testified, *without objection*, that the amount of interest due on the note, as of the day of the trial, was $10,-721.59. On cross-examination Mr. Williams further added that he and a fellow bank-employee, Gary Soper of the Loans Operations Department, independently computed the interest due on the loan. He explained that his computation of the interest due

---

1. The action was dismissed as to the defendant Gilbert C. Laite, because Laite obtained a discharge of his debts by order of the United States Bankruptcy Court for the District of Maine, and we have modified the caption of the case accordingly.

was based on a schedule kept by the plaintiff bank of the changes in the First National Bank of Boston's prime rate. Although he was not certain as to when the rate schedule was prepared, Williams vouched for its constant currency, stating:

It is a schedule we keep current as changes in the rates occur. It is one that is constantly in existence and changes are added to the schedule as changes occur. It was not prepared specifically for this trial.

Again, in his cross-examination Williams further explained the preparation of the schedule:

Q Can you tell me who in your bank maintains these prime rate records?

A Yes, I can. Gary Soper, who is an officer of our bank and runs our Loans Operations Department here in Bangor.

Q And he obtains this information daily on the telephone from First National Bank in Boston; is that right?

A No, Sir. Someone in our Treasurer's Department obtains this rate as well as other information from that bank daily and provides the prime rate information to Mr. Soper.

Williams did acknowledge that the defendants had made payments on the note, but indicated that the payments were applied to outstanding interest; hence, the amount of interest owed was always computed on the basis of the full principal amount of the loan, *i.e.* $50,000.00. He explained that the interest was computed for each period during which a particular prime rate was in effect in manner as follows:

I would take the $50,000 principal times the number of days that the prime rate at that particular date was in effect, times that prime rate, divided by 365, and that will tell me how much interest had accrued for that period, and such a computation has to be made for any period at which the prime rate changed.

Williams further testified that it is common practice for Maine banks to base loans on the prime rate charged by the First National Bank of Boston.

After defense counsel had completed his cross-examination, the plaintiff sought the admission in evidence of the interest rate schedule and an adding machine tape showing Williams' calculations. The defendants objected on the grounds that the schedule and tape were hearsay and contained hearsay within hearsay. The court admitted the exhibits indicating its decision was based on the business records exception to the hearsay rule.

### I The schedule

■ In order to satisfy the business records exception to the hearsay rule,[2] the proponent of the record must establish, by the testimony of "the custodian or other qualified witness" that (1) the record was made "at or near the time" of the events reflected in the record by, or from information transmitted by, a person with personal knowledge of the events recorded therein; (2) the record was kept "in the course of a regularly conducted business"; (3) it was the regular practice of the business to make records of the type involved; and (4) no lack of trustworthiness is indicated from the source of information from which the record was made or the method or circum-

---

**2.** M.R.Evid. 803 provides in pertinent part:

The following are not excluded by the hearsay rule, even though the declarant is available as a witness:

(6) *Records of regularly conducted business.* A memorandum, report, record, or data compilation, in any form, of acts, events, conditions, opinions, or diagnoses, made at or near the time by, or from information transmitted by, a person with knowledge, if kept in the course of a regular conducted business, and if

it was the regular practice of that business to make the memorandum, report, record, or data compilation, all as shown by the testimony of the custodian or other qualified witness, unless the source of information or the method or circumstances of preparation indicate lack of trustworthiness. The term "business" as used in this paragraph includes business, institution, association, profession, occupation, and calling of every kind, whether or not conducted for profit.

stances under which the record was prepared. *See E.N. Nason, Inc. v. Land-Ho Development Corp.*, 403 A.2d 1173, 1178 (Me. 1979), 1 A.L.R. 4th 306; *Torrey v. Full Gospel Church of Searsport*, 394 A.2d 276, 280–81 (Me.1978).

■ Through the testimony of its vice-president, Sterling Williams, the plaintiff bank met the requirements of the business records exception with respect to the prime rate schedule. Williams was a "qualified witness", competent to testify as to the essential elements of the business records exception. His testimony plainly indicated that he was "intimately involved in the daily operation" of the bank. *E.N. Nason, Inc. v. Land-Ho Development Corp.*, 403 A.2d at 1178. Williams' testimony as to how the interest rate schedule was generated showed the firsthand nature of his knowledge. Although he did not know exactly when the schedule was prepared, Williams did testify that an employee in the treasurer's department obtained the prime rate from the First National Bank of Boston by telephone daily. This information was then transmitted to Mr. Soper of the loans operations department who maintained the record. Williams testified:

> It is a schedule we keep current as changes in the rates occur. It is one that is constantly in existence and changes are added to the schedule as changes occur.

Williams also stated that it was common practice for Maine banks to base loans on the prime rate charged by the First National Bank of Boston.

This testimony showed that the schedule was made at or near the time of the prime rate changes reflected therein; that the schedule was kept in the course of a regularly conducted banking business; and that it was the regular practice of the bank to keep records of this type. *See, e.g., E.N. Nason, Inc. v. Land-Ho Development Corp.*, 403 A.2d at 1178–79; *Torrey v. Full Gospel Church of Searsport*, 394 A.2d at 280–81. There are no indicia in the record that the prime rate schedule is untrust-

worthy. Williams' testimony indicated that the record was kept in a systematic way, *see Torrey v. Full Gospel Church of Searsport*, 394 A.2d at 281, and there is no indication that the entries in the schedule are inaccurate or reflect bad faith on the part of the plaintiff. Furthermore, Williams testified that it was a common practice for Maine banks to rely on the information contained in the schedule. The Superior Court did not abuse its discretion in determining the schedule to be trustworthy. *E.N. Nason, Inc. v. Land-Ho Development Corp.*, 403 A.2d at 1179.

■ The defendants argue, however, that, even if the interest rate schedule qualified as a business record, it was nevertheless inadmissible because it was based on inadmissible hearsay. An alternative way of phrasing this contention is that the record was not made by a person with personal knowledge of the events recorded. There are two potential problems here. The first is that the information was transmitted from one person to another within the business enterprise prior to being recorded. The information contained in the prime rate schedule was transferred by the person in the treasurer's department, who obtained the prime rate from the Boston bank, to Mr. Soper in the loans operations department, who compiled the schedule. While this type of communication within the enterprise is hearsay, it clearly falls within the scope of the business records exception. Thus, in *Nason* this Court held that bills which had been created on the basis of other documents possessed by an enterprise fell within the scope of the exception, because they were prepared on the basis of "information transmitted by persons with knowledge." *Id.* 403 A.2d at 1179. The rule itself (M.R.Evid. 803(6)) provides that the record must be made "by, *or from information transmitted by,* a person with knowledge." The report of the prime rate to Mr. Soper, made in the regular course of the bank's business by an employee charged with obtaining the prime rate and passing it along, falls within the

scope of the business records exception to the hearsay rule. *See McCormick's Handbook of the Law of Evidence,* § 310 at 726 (2d ed. 1972); Weinstein & Burger, *Weinstein's Evidence,* § 803(6)[04] at 803–156 (Sept.1979).

■ A more significant problem is the original source of the information contained in the rate schedule, *i.e.,* the employee of the First National Bank of Boston who was telephoned for the prime rate information each day. This employee was not within the business enterprise that maintained the record. The evidence showed that the plaintiff bank obtained the prime rate daily and that it was common practice for Maine banks to rely on the First National Bank of Boston's floating prime rate. Under these circumstances it would be fair to infer that the employee of the First National Bank of Boston who reported the prime rate did so in the regular course of the Boston bank's business as a part of his or her job duties. The Boston bank would have an obvious business incentive in assuring that this employee would have personal knowledge of changes in the prime rate and would report those changes accurately. Thus, the indicia of reliability that form the basis of the business records exception are present, even though the information was originally reported by an employee not within the plaintiff's organization.[3] Here, the information was transmitted by an employee of the banking institution which was the source of that information, which information was then integrated into the plaintiff's records and relied upon by the plaintiff in its own business operations. We hold that under these circumstances the schedule satisfied the requirements of M.R.Evid. 803(6) and was properly admitted. *See Matter of Ollag Const. Equipment Corp.,* 665 F.2d 43, 46 (2d Cir.1981) (financial statements pre-

pared by debtors at request of bank and regularly used by the bank in making decisions whether or not to extend credit were admissible under the business records exception to the hearsay rule). "Other circuits have recognized that under Rule 803(6) business records [of one business] are admissible [as the business records of another business] if witnesses testify that the records are integrated into [the latter] company's records and relied upon in its day-to-day operations." *Id.* at 46. *See also United States v. Colyer,* 571 F.2d 941, 947, (5th Cir.1978), cert. denied, 439 U.S. 933, 99 S.Ct. 325, 58 L.Ed.2d 328 (1978) (credit card purchase tickets flagged by proof machine showing purchases made during the time the card was lost or stolen and kept by the bank in a special case file properly admitted in evidence as business records in prosecution for unlawful transportation of lost and fraudulently obtained credit card in interstate commerce); *United States v. Ullrich,* 580 F.2d 765, 772 (5th Cir.1978) (inventory schedule in the form of a computer printout prepared by Ford Motor Credit Company and the manufacturer's statement of origin sent to the dealership with the automobile by Ford Motor Company properly admitted as business records through witness employed by the dealership because they are "records transmitted by persons with knowledge and then confirmed and used in the regular course of the dealership's business"); *United States v. Flom,* 558 F.2d 1179, 1182–83 (5th Cir.1977) (invoices received and held by one company in its regular course of business, but prepared and sent to it by another company, admitted as business records solely on basis of testimony from receiving company).

## II *The tape*

■ The defendants also contend that the adding machine tape showing Williams'

---

**3.** *See* Fed.R.Evid. 803, Notes of Advisory Committee, *Federal Rules of Evidence Annotated* at 14 (Federal Judicial Center 1975):

The element of unusual reliability of business records is said variously to be supplied by systematic checking, by regularity and con-

tinuity which produce habits of precision, by actual experience of business in relying upon them, or by a duty to make an accurate record as part of a continuing job or occupation.

calculation of the interest due was improperly admitted as a business record. We agree that the tape failed to meet the requirements of the business records exception.[4] Principally, there is nothing in the record to show that the tape was produced at or near the time of the events recorded or was kept in the regular course of business. Williams' testimony coupled with the fact that the tape contained a computation of interest owed up to the day before the day of the trial indicates the tape was prepared especially for the litigation. *See Morgan v. Paine*, 312 A.2d 178, 183 (Me. 1973).

█ The adding machine tape as such was not admissible as independent evidence of the amount of interest due on the note. Like Mrs. Pendexter's list of expenses (*Pendexter v. Pendexter*, 363 A.2d 743, 746 (Me.1976)), the tape itself, though perhaps indicating accuracy of mathematical computations, absent other evidence, was not entirely relevant evidence of the interest due. The tape did show the changes in the First National Bank of Boston's prime rate, the calculations made by Williams, and Williams' already proffered conclusion that the total amount of interest owed was $10,-721.59. All of this evidence was already before the court in other forms. The changes in the prime rate were properly admitted in evidence by way of the prime rate schedule. The amount of interest owed as of the date of trial came in without objections on direct examination of Mr. Williams, who on cross-examination was permitted to testify as to *how* he calculated the total amount of interest due. Thus, independently of the adding machine tape, the court had before it both Williams' conclusion as to the total amount of interest the plaintiff bank claimed it was owed and

the basis of that conclusion. Unlike in *Morgan v. Paine, supra,* we are satisfied that the presiding justice, trying the case without jury, did not attach to this evidence (more or less of only demonstrative value) any inherent evidential weight independently of its adoption by the witness as the embodiment of his own testimony.[5] *Id.* at 185–86, n. 9.

The probative effect of the adding machine tape was merely cumulative, and its admission did not affect the substantial rights of the defendants. M.R.Civ.P. 61. *See State v. Viger*, 392 A.2d 1080, 1083 (Me.1978) (error in admitting invoices associated with stolen radios under business records exception to hearsay rule *harmless*, where price of radios had been established by direct testimony and radios had been effectively identified); *Ginn v. Penobscot Company*, 334 A.2d 874, 886, n. 1 (Me.1975) (assuming plaintiff's opinion testimony as to market value of his services was improperly admitted, error was harmless since testimony was merely cumulative).

The entry is:

Judgment affirmed.

All concurring.

---

**4.** To the extent that the Superior Court treated the adding machine tape as probative of *how* Williams reached the interest total he testified to on direct examination, it was not hearsay. We assume from the court's remarks, however, that it admitted the tape as well for the substantive purpose of showing the total amount of interest due. See M.R.Evid. 801(c).

**5.** *Cf. Reisman v. Martori, Meyer, Hendricks, & Victor*, 155 Ga.App. 551, 271 S.E.2d 685, 688 (1980) involving computer printouts admissible in evidence as business records under exception to hearsay rule; *also, Rosenberg v. Collins*, 624 F.2d 659, 665 (5th Cir.1980); *Transport Indemnity Company v. Seib*, 178 Neb. 253, 132 N.W.2d 871, 875, 11 A.L.R.3d 1368 (1965).