2002 ME 150

**STATE of Maine**

v.

**Brenda RADLEY.**

Supreme Judicial Court of Maine.

Submitted on Briefs: April 18, 2002.
Decided: Sept. 5, 2002.

Geoffrey A. Rushlau, Dist. Atty., Donald L. Lawson–Stopps, Asst. Dist. Atty., Rockland, for the State.

William S. Maddox, Rockland, for defendant.

Panel: SAUFLEY, C.J., and CLIFFORD, RUDMAN, DANA, ALEXANDER, CALKINS, and LEVY, JJ.

RUDMAN, J.

[¶ 1] Brenda Radley appeals from the judgments of conviction entered in the District Court (Rockland, *Worth, J.*) convicting her of one count of theft by unauthorized taking (Class E), 17–A M.R.S.A. § 353(1) (1964), and seven counts of misuse of identification (Class D), 17–A M.R.S.A. § 905–A(1)(A) (Supp.2001). She contends (1) that the pleading that alleged one of the counts of misuse of identification was inadequate because it failed to provide the victim's name, (2) that the court erred in admitting into evidence an account report pursuant to the business record exception to the hearsay rule, and (3) that there was insufficient evidence to support her convictions. We disagree with Radley's contentions as to the deficiency of the evidence of one of the counts of misuse of identification and the sufficiency of the evidence as to the counts not associated with the account report, but agree with Radley's contention that the court erred in admitting into evidence an account report pursuant to the business record exception to the hearsay rule. We therefore affirm in part and vacate in part.

## I. STATEMENT OF THE CASE

[¶ 2] Two separate complaints were filed against Radley. The first, CR–01–280, alleged two counts of misuse of identification and one count of theft. Although the complaint named Richard Boisvert as the victim of the alleged theft, the misuse of identification charges did not name a particular victim. The second, CR–01–1047, alleged six counts of misuse of identification and specifically named individual victims. The two complaints were tried together.

[¶ 3] Regarding CR–01–1047, Paige Boisvert testified that Brenda Radley baby-sat for her children on three separate occasions in early January 2001, including the morning of January 8. She stated that some time after the last morning that Radley baby-sat, she noticed that an unauthorized transfer had been made from one of her husband's Government Employee Credit Union (GECU) accounts.

[¶ 4] Richard Boisvert testified that when Radley baby-sat she had complete access to their Thomaston home. He explained that the family's financial records were kept in an unlocked filing cabinet.

[¶ 5] Jane Brown, GECU's share draft manager, testified concerning the unauthorized transfer from the Boisverts' account. She testified that the bank received notice of the transfer by way of an electronic report transmitted from the Electronic Clearing House (ECH). Brown testified that the majority of GECU's transactions were transmitted electronically and that the credit union relied daily on ECH reports to update its customer accounts. She explained that every ECH report contains the amount of each transaction, the name and account number to be charged, and a trace number. She testified that the Boisverts' credit union statements showed a transfer of funds from the savings account to the checking account to clear an item from the American Credit Telephone Co. in the amount of $219.95. Brown testified that the report bore Brenda Radley's name as the target customer.

[¶ 6] During Jane Brown's testimony, the State moved to admit into evidence a packet of documents that included an ECH report and an ECH return item exception form, both from Richard Boisvert's account. These reports evidenced the unauthorized transfer of funds. Although Brown stated that GECU considers the ECH reports as credit union records, she

admitted that she was unfamiliar with ECH's record keeping. Radley questioned the trustworthiness of the documents and objected to their admission into evidence on the grounds that they constituted double hearsay. The court admitted the reports over her objection pursuant to Maine Rule of Evidence 803(6), the business record exception to the hearsay rule.

[¶ 7] Detective Young of the Rockland Police Department testified about the transaction in CR–01–1047. He stated that he was assigned to investigate a case of calling card fraud. Apparently, a number of individuals, including Brenda's father, Willard Radley, had come forward complaining of unauthorized long distance charges on their telephone bills. Young stated that when he collected these phone bills he noticed that most of the unauthorized calls were to the same numbers. Again, further investigation pointed to Brenda Radley. Upon the execution of a search warrant of her residence, Young found scraps of paper with telephone numbers written upon them that matched the unauthorized calls from the phone bills. He also discovered the calling card from which the unauthorized calls were made. Young testified that when he interviewed Radley, she admitted that she had used her father's two telephone numbers to obtain a calling card from Dialfreecalls.com, which included two and a half hours of free long distance. He also testified that Radley admitted to using, without permission, the telephone numbers of four other friends and acquaintances to receive similar benefits.

[¶ 8] Radley, who testified in her own defense, denied activating the Boisverts' credit card and denied transferring funds from their GECU account. Radley did admit that she used the telephone numbers of other individuals to receive free long-distance service, but she explained that she never intended anyone to be billed for her long-distance calls. She stated that the calling card enabled her to receive two and a half hours of free long distance. She testified that it was her understanding that a beep would sound when there was one minute remaining on the card, and that any call would be automatically cut off after that minute expired.

[¶ 9] In CR–01–280, the court found Radley guilty of one count of misuse of identification relating to her unauthorized use of the Boisverts' GECU account number and theft and not guilty of the remaining count. In CR–01–1047, the court found her guilty of all six counts of misuse of identification relating to the calling card fraud. The court sentenced Radley to the Knox County Jail for a period of six months on each misuse of identification charge and thirty days on the theft charge, all to be served concurrently. Radley filed this appeal.

## II.   DISCUSSION

### A.   Sufficiency of the Pleading

[¶ 10] Radley was convicted of one of the charges of misuse of identification contained within CR–01–280. She argues that this conviction must be vacated because the pleading failed to provide the name of the alleged victim.

[¶ 11] Pursuant to our Rules of Criminal Procedure, a complaint "shall be a plain, concise, and definite written statement of the essential facts constituting the offense charged." M.R.Crim. P. 3(a). Also, we have stated that a complaint is sufficient if it "adequately apprise[s] a defendant of reasonable and normal intelligence of the act charged, enabling him to defend himself and, upon conviction or acquittal, to make use of the judgment as the basis for a plea of former jeopardy, should the occasion arise." *State v. Sprague*, 583 A.2d 203, 204 (Me.1990) (quoting *State v.*

*Carter,* 444 A.2d 37, 39 (Me.1982) (emphasis omitted)). Thus, although a complaint must inform the defendant of the charges against her, it need not specify all of the circumstances surrounding the alleged criminal act. *See State v. Hebert,* 448 A.2d 322, 326 (Me.1982) (valid gross sexual misconduct indictment was sufficient even when it failed to specify the particular offensive act within a broader statute); *State v. Coleman,* 452 A.2d 397, 399 (Me. 1982) (burglary indictment that failed to specify the location of the alleged crime was sufficient because the statute did not require a location).

[¶ 12] The disputed pleading states:

On or about January 8, 2001, in Thomaston, Knox County, Maine, **BRENDA L. RADLEY,** did intentionally or knowingly present or use an account, credit, or billing number without authorization or that was obtained as a result of fraud or deception, in order to obtain confidential information, property or services.

This pleading provides the date and location and outlines the elements of the alleged crime. Due to the fact that the Boisverts' home is located in Thomaston, that Radley baby-sat for the Boisverts on January 8, 2001, and that, within the complaint, the disputed pleading precedes the theft pleading that specifically names the Boisverts as victims, Radley should have been aware that the misuse of identification charge concerned the Boisverts. Though it would have been better practice for the State to include the name of the alleged victim, we cannot say that the pleading is defective on its face. To the contrary, the pleading provides enough information to alert Radley of the crime charged and enable her to offer a defense. Moreover, there is no indication from the record or the transcript that the omission of the victim's name confused Radley. If she had been confused, she had the option of asking the court to direct the filing of a bill of particulars to clear up the ambiguities. M.R.Crim. P. 16(c)(1).

**B. Admissibility of the Credit Union Record**

■ [¶ 13] In *Northeast Bank & Trust Co. v. Soley,* 481 A.2d 1123, 1126–27 (Me. 1984), we held that a rate schedule the bank used to determine the proper amount of interest owed on a loan was properly admitted into evidence as a business record pursuant to M.R. Evid. 803(6). Northeast Bank based its rate schedules upon information obtained from First National Bank of Boston. *Id.* at 1125. Before upholding the admissibility of the schedule, we noted that the original source of information, First National Bank, was a separate entity from the business that maintained the proposed record. *Id.* at 1125–26. We determined, however, that First National Bank reported the information in the regular course of its business, that Northeast received the information daily, and that it was common for banks to rely on this information. *Id.* at 1126. We concluded that the "indicia of reliability that form the basis of the business records exception are present, even though the information was originally reported by an employee not within the plaintiff's organization." *Id.* at 1127 (footnote omitted).

■ [¶ 14] A proper foundation for the admission of documents pursuant to the business records exception requires the testimony of "the custodian or other qualified witness" to show that:

(1) the record was made "at or near the time" of the events reflected in the record by, or from information transmitted by, a person with personal knowledge of the events recorded therein;

(2) the record was kept "in the course of a regularly conducted business";

(3) it was the regular practice of the business to make records of the type involved; and

(4) no lack of trustworthiness is indicated from the source of information from which the record was made or the method or circumstances under which the record was prepared.

*N.E. Bank & Trust Co.,* 481 A.2d at 1125–26 (paraphrasing M.R. Evid. 803(6) (references omitted)).

[¶ 15] We conclude, first, that Jane Brown, the Credit Union's share draft manager, did not qualify as a "custodian or other qualified witness" to testify about the ECH reports for the purposes of Rule 803(6). *See N.E. Bank & Trust Co.,* 481 A.2d at 1125–26. The ECH reports were created by another entity, not the Credit Union, in an unknown location by an unknown person or persons. Brown is neither employed by the ECH nor in any way involved with creating, maintaining, or transmitting the reports, and therefore does not qualify as the "custodian or other qualified witness." In fact, Brown could testify only as to the Credit Union's reliance on the ECH reports. The State did not offer the testimony of any other witness who would qualify as the custodian of the ECH reports. Thus, we conclude that the State did not offer the requisite testimony of a "custodian or other qualified witness" for admission of the ECH reports pursuant to Rule 803(6).

[¶ 16] The record is also devoid of evidence regarding whether the ECH reports were created "at or near the time" of the unauthorized transfer, whether they were generated by someone with personal knowledge of the unauthorized transfer recorded in the report, whether it was ECH's regular practice to generate the records, or whether any lack of trustworthiness was indicated in the creation or preparation of the reports. Indeed, Brown conceded that she had no knowledge of the source of ECH's information or of how the reports were created, that the Credit Union received the information from ECH only through another intermediary entity, and that she could assume only that ECH maintained its information by computer. To permit the State to proffer the records of ECH through the testimony of a witness employed by an entirely different organization, simply because her employer relied on that organization's records in its own business dealings, is wholly unsupported by rule or law. Thus, the State did not establish a sufficient foundation for admission of the ECH reports pursuant to the business records exception.

[¶ 17] We have not adopted the "catch-all" exception to hearsay found in Federal Rule of Evidence 807,[1] and we should not read one into the Maine Rules of Evidence where none exists. Because the State laid an inadequate foundation for the admission of the ECH reports as business records, and because the Maine Rules of Evidence contain no "catch-all" rule for the admission of reliable hearsay, the court's admission of the ECH reports was error.[2]

---

1. FED. R. EVID. 807 provides, in pertinent part:

    A statement not specifically covered by Rule 803 or 804 but having equivalent circumstantial guarantees of trustworthiness, is not excluded by the hearsay rule, if the court determines that (A) the statement is offered as evidence of a material fact; (B) the statement is more probative on the point for which it is offered than any other evidence which the proponent can procure through reasonable efforts; and (C) the

general purposes of these rules and the interests of justice will best be served by admission of the statement into evidence.

2. The State argues that the court's holding is a natural extension of *Northeast Bank & Trust Co. v. Soley,* 481 A.2d 1123 (Me.1984), where we concluded that a rate schedule Northeast Bank used to determine the proper amount of interest was properly admitted into evidence under the business records exception to the hearsay rule. *N.E. Bank & Trust Co.,* 481

 

■ [¶ 18] Furthermore, admission of the ECH reports cannot be said to have been harmless error. To prove the commission of theft, the State must show that the defendant: "(1) obtained or exercised unauthorized control over (2) the property of another (3) with the intent to deprive the owner of that property." *State v. Nelson*, 1998 ME 183, ¶ 5, 714 A.2d 832, 833 (citation omitted); 17-A M.R.S.A. § 353(1) (1964). The elements of misuse of identification are: (1) to obtain confidential information, property or services, (2) the defendant intentionally or knowingly presents or uses a credit card or debit card, and (3) the debit or credit card is "stolen, forged, canceled or obtained as a result of fraud or deception." 17-A M.R.S.A. § 905-A(1)(A) (Supp.2001).

[¶ 19] The ECH reports constituted the only evidence the State offered to prove the first element of the theft charge—that Radley obtained or exercised unauthorized control over the $219.95 transferred from the Boisverts' account. The ECH reports also constituted the only evidence the State offered regarding the misuse of identification charge to prove that Radley intentionally or knowingly used the Boisverts' credit card. Thus, without the admission of the ECH reports, insufficient evidence exists to support Radley's convictions based on the transfer from the Boisverts' account. We therefore vacate the convictions for theft and misuse of identification that related to the unauthorized $219.95 transfer from the Boisverts' account.

C. Sufficiency of the Evidence

■ [¶ 20] In a criminal case, we review the sufficiency of the evidence in "the light most favorable to the State to determine whether the trier of fact rationally could have found beyond a reasonable doubt every element of the offense charged." *State v. Turner*, 2001 ME 44, ¶ 6, 766 A.2d 1025, 1027 (quoting *State v. Black*, 2000 ME 211, ¶ 14, 763 A.2d 109, 113).

[¶ 21] Contrary to Radley's contentions, the court could rationally have found that to obtain free telephone services, she used various individuals' identification information without their authorization.

The entry is:

Judgment in CR–01–280 vacated; judgment in CR–01–1047 affirmed.

---

A.2d at 1127. The rate schedules addressed in *N.E. Bank & Trust,* however, are quite distinct from the information central to the defendant's conviction here. Rate information is based on objective and verifiable numbers. Here, the reported information must have come to ECH through a third party and reflected the defendant's conduct rather than simply his calculations.