2006 ME 76

**STATE of Maine**

v.

**Lawrence A. PERRY.**

Supreme Judicial Court of Maine.

Submitted on Briefs: Feb. 27, 2006.

Decided: June 20, 2006.

Norman R. Croteau, DA, Joseph M. O'Connor, ADA, South Paris, for the State.

William Maselli, Esq., Portland, for the Defendant.

Panel: CLIFFORD, DANA, ALEXANDER, CALKINS, LEVY, and SILVER, JJ.

CALKINS, J.

[¶ 1] Lawrence A. Perry appeals from a judgment of conviction of nine offenses entered in the Superior Court (Oxford County, *Gorman, J.*), after a jury trial. The offenses are: (1) a guide license violation for knowingly assisting a client in violating the fish and wildlife laws; (2) unlawfully hunting bear with dogs; (3) a closed season violation; (4) two counts of

having a loaded firearm in a motor vehicle; (5) hunting without hunter orange clothing; (6) violating a commissioner's rule; (7) illegal possession of a deer killed at night; and (8) driving deer. Perry was charged with thirty-two offenses as the result of an undercover operation by the Maine Warden Service. Some of the charges were dismissed before submission to the jury, and the jury acquitted Perry of all but nine of the remaining offenses.

[¶ 2] Perry offers several arguments as to why his guide license violation should be vacated. Perry also contends that the court erred in instructing the jury on accomplice liability. He further argues that Perry's convictions should be vacated and the charges dismissed because the undercover warden's illegal actions were so outrageous as to be contrary to fundamental fairness and due process.

[¶ 3] We affirm six of the nine convictions. We vacate the conviction for the guide license violation because the statute on which the underlying violation was based was repealed before the date of the offense. We vacate the conviction for hunting without hunter orange clothing because the offense was a civil violation and not a crime. We also vacate one of the convictions for having a loaded firearm in a motor vehicle because there was insufficient evidence to find Perry guilty on this offense except as an accomplice, and the accomplice liability instruction was erroneous.

## I. BACKGROUND

[¶ 4] The Maine Warden Service undertook an investigation into potential hunting violations by Perry, a licensed Maine guide since 1993. An undercover warden posed as a hunter from Pennsylvania named Bill Moyer. As Moyer, the warden contacted Perry in November 2002, and reserved a bear hunt with Perry for the following autumn. The warden paid Perry $1000 cash and arranged to stay in a trailer on Perry's property that Perry used to house clients. The bear hunt began on September 15, 2003, and even though the warden got his bear on the first day of the hunt, he continued to hunt with Perry and others for several more days.

[¶ 5] Still posing as Moyer, the warden accepted an invitation to return for deer hunting in November. During deer season, the warden stayed in Perry's home. The warden, Perry, and others hunted deer from November 4 through 7, and when Perry left to hunt out-of-state, the warden remained to hunt with Perry's associates. Perry later returned to Maine, and the warden, Perry, and others hunted on November 25, 26, and 27.

[¶ 6] Complaints were issued against Perry charging him with thirty-two offenses. Perry entered not guilty pleas in the District Court, and the matters were transferred to the Superior Court. A jury trial was held over five days. The warden and Perry both testified, and their accounts of the time they spent hunting together differed substantially. Looking at the evidence in the light most favorable to the State on the nine offenses that Perry was found guilty of committing, the jury could have found the following.

1. Guide license violation, 12 M.R.S.A. § 7371–A(1) (1994).[1] The com-

---

1. All of the offenses for which Perry was convicted, unless otherwise noted, were Class E offenses. 12 M.R.S.A. § 7901–A (Pamph. 2003). The statutes under which Perry was convicted have since been repealed, and all but one has been replaced. *See* P.L.2003, ch. 414, §§ A–1 to A–2 (effective Aug. 31, 2004) (codified at 12 M.R.S. §§ 11201(1), 11203, 11206(1)(C), 11212, 11302(1), 11453, 12858 (2005)). Pursuant to P.L.2003, ch. 414, §§ A–1 to A–2 (effective Aug. 31, 2004), 12 M.R.S.A. § 7036(1) (1994) was repealed and replaced with 12 M.R.S.A. § 10602 (Pamph.2003), but section 10602 was then repealed by P.L.2003, ch. 655, § B–63 (effective Aug. 31, 2004).

plaint charged that on September 15, 2003, Perry was a licensed guide and knowingly assisted a client in violating a provision of the fish and wildlife statutes. Although the complaint did not specify the offending conduct or the particular statute that the client violated, the court instructed the jury that the offense referred to the State's accusation that Perry traveled with the warden into the State of New Hampshire with a bear. The undercover warden testified that he and Perry transported the bear the warden shot to a tagging station, and in doing so, they went into New Hampshire. Perry admitted going into New Hampshire because the most direct route between the location where the bear was shot and the nearest tagging station was on Route 113, a road that took them into New Hampshire for a short distance.

2. Unlawfully hunting bear with dogs, 12 M.R.S.A. § 7452(1) (1994). There was evidence that on September 18, while hunting bear, the warden and others in the hunting party, which included Perry, released three dogs, and then Perry told the warden to release two more dogs, which he did. Later that same day during a second hunt, the hunting party released five dogs and Perry released one more.

3. Closed season violation, 12 M.R.S.A. § 7406(1) (1994). Perry was charged with hunting a bobcat during the closed season on bobcat. There was testimony that Perry shot at a bobcat on November 4, 2003, and there was evidence that the season was closed to hunting bobcat on that date. Perry admitted shooting at the bobcat so that it would leave a print, but denied that he was hunting.

4. Having a loaded firearm in a motor vehicle, 12 M.R.S.A. § 7406(9–A) (Pamph.2003). There was testimony that on November 4, 2003, when the hunting party saw the bobcat, Perry loaded his firearm in the truck and then jumped out of the truck to shoot at the bobcat.

5. Hunting without hunter orange clothing, 12 M.R.S.A. § 7406(12) (Pamph.2003). As discussed below, this offense was a civil violation on November 4, 2003, when Perry is alleged to have committed it. There was evidence that when Perry shot at the bobcat, he was not wearing any hunter orange clothing.

6. Violation of a commissioner's rule, 12 M.R.S.A. § 7036(1) (1994). The rule that Perry is charged with violating is hunting an antlerless deer without a permit. There was evidence that on November 25, 2003, Perry did not have a permit to hunt antlerless deer, and he shot at an antlerless deer.

7. Illegal possession of a deer killed at night, 12 M.R.S.A. § 7406(10) (Pamph.2003).[2] There was evidence that on November 27, 2003, Perry, the undercover warden, and another hunter were in Perry's truck at night, and the other hunter shot a deer at 4:04 A.M. The warden and the other hunter loaded the deer into Perry's truck at Perry's direction.

8. Having a loaded firearm in a motor vehicle, 12 M.R.S.A. § 7406(9–A) (Pamph.2003). There was evidence that while night hunting on November 27, the hunter who shot the deer loaded his rifle while he was in Perry's truck, and

---

**2.** This was a Class D offense. 12 M.R.S.A. § 7901–A(7)(D)(3). It was appropriately charged as a Class D offense in Count 29 of the complaint, but on the judgment and commitment form Count 29 is listed as "Hunting Wild Animals in Closed Season" and as a Class E offense. This listing is erroneous, and the judgment needs to be corrected.

that the sound of loading the firearm was audible. Perry had also directed the warden to have his rifle "ready" while he was in the truck.

9. Driving deer, 12 M.R.S.A. § 7458(10) (Pamph.2003). The warden testified that Perry participated in a drive for deer on November 27, 2003. The warden had testified in more detail regarding deer drives on November 6 and 7, describing how some members of the hunting party walked and "pushed" the deer toward the "poser," who would be in a position to shoot the deer. The warden testified that during the November 6 drive, Perry was the organizer and directed who was going to push and who was going to stand.

[¶ 7] At the close of the evidence, the State requested a jury instruction on accomplice liability, specifically with respect to the three charges of night hunting, and Perry objected on the ground that the instruction was not generated by the evidence. The court gave an accomplice liability instruction.

[¶ 8] As stated above, the jury found Perry guilty of nine of the charges against him. The court sentenced Perry to pay a total of $4690 in fines, including surcharges and assessments, and sentenced Perry to the mandatory minimum three days in jail for illegal possession of a deer killed at night. *See* 12 M.R.S.A. § 7901–A(7)(D)(3) (Pamph.2003).[3]

## II. DISCUSSION

### A. Guide License Violation

■ [¶ 9] We first address Perry's conviction for a guide license violation. The complaint cited 12 M.R.S.A. § 7371–A(1), which states: "A person is guilty of a guide license violation if that person is licensed as a guide and that person ... [k]nowingly assists a client in violating any of the provisions of chapters 701 to 721." The complaint neither set forth the acts that constituted the violation nor stated the statutory provision that was violated by the client with Perry's assistance. Nonetheless, there is no dispute that the facts giving rise to this charge occurred on September 15, when the warden, who was Perry's client, transported a bear into New Hampshire while on the way to a tagging station in Maine. The State was required to prove that (1) Perry was licensed as a guide; (2) he knowingly assisted; (3) a client; (4) to violate a provision of chapters 701 to 721. 12 M.R.S.A. § 7371–A(1). With regard to the last element, it is likely that the State was referring to 12 M.R.S.A. § 7452(14) (1994), which had been in chapter 709 and provided: "A person is guilty ... of transporting bear out of this State if he transports or attempts to transport any bear beyond the limits of this State." However, that statute was repealed before September 15, 2003. P.L. 2003, ch. 331, § 9 (effective Sept. 13, 2003).[4]

---

**3.** Section 7901–A(7)(D)(3) of title 12 was repealed, P.L.2003, ch. 414, § A–1 (effective Aug. 31, 2004), and recodified at 12 M.R.S. § 11206(2)(A) (2005).

**4.** On September 15, 2003, transporting a bear out of the state was purportedly a civil violation pursuant to 12 M.R.S.A. § 7901–A(6)(C)(4), which provided:

> 6. Civil violations of chapter 709. The following violations of chapter 709 are civil violations ...:
> ....

C. Chapter 709, subchapter 3 violations:
....
(4) Transporting bear out of the State as described in section 7452, subsection 14
....

Chapter 709 had included section 7452(14), but because the section was repealed, it was no longer a part of chapter 709, and the attempted reference to section 7542(14) in 12 M.R.S.A. § 7901–A(6)(C)(4) was a nullity. Thus, transporting a bear out of the state was not a civil violation on September 15, 2003, as the statute describing the offense referred

[¶ 10] Because it was neither a crime nor a civil violation to transport a bear into New Hampshire on September 15, 2003, it could not have been a crime for a guide to assist a client in transporting a bear into New Hampshire. Thus, Perry's conviction for a guide license violation must be vacated.

## B. Hunting Without Hunter Orange Clothing

■ [¶ 11] Perry's conviction for hunting without hunter orange clothing must be vacated because the offense was not a crime at the time he committed it. The complaint charged Perry with violating 12 M.R.S.A. § 7406(12) and alleged that it was a Class E offense. Throughout the proceedings the matter was treated as a criminal offense.[5] However, the Legislature amended the enforcement statute, 12 M.R.S.A. § 7901 (1994), in 2002, and it enacted 12 M.R.S.A. § 7901–A(6)(A)(2) (Pamph.2003), which made hunting without hunter orange clothing a civil violation.[6] P.L.2001, ch. 421, §§ B–87 to B–88 (effective Jan. 1, 2002). Because hunting without hunter orange clothing was not a criminal offense, Perry should not have been charged with or convicted of a criminal offense, and his conviction cannot stand. *See State v. Goodwin*, 414 A.2d 894, 895–96

(Me.1980) (vacating a criminal conviction for an offense that was a civil violation).

## C. Accomplice Liability

■ [¶ 12] The State requested an instruction on accomplice liability for the three night hunting charges. Over Perry's objection that the evidence did not generate an accomplice liability instruction, the court gave the following instruction:

A person may be guilty of a crime if he personally does the acts that constitute the crime or if he's an accomplice of the person who actually commits the crime; however, a person is not made an accomplice merely because he is in the presence of the person who actually committed the crime or the goods taken in a crime.

Also, on the question of accomplice liability, it makes no difference whether one receives any benefit from the crime or not.

[¶ 13] Although the State had requested the accomplice liability instruction only with respect to the night hunting charges, the court did not specify that the instruction was limited to the night hunting charges. At the conclusion of the instructions, the court inquired of counsel if there was "[a]nything else on the instructions?"

to violations in chapter 709, and the Legislature had already removed the bear transportation violation from chapter 709 by repealing section 7452(14).

Section 7901–A(6)(C)(4) was later repealed. P.L.2003, ch. 414, § A–1 (effective Aug. 31, 2004).

When the Legislature recodified the fish and wildlife laws, it made the out-of-state transportation of a deer or bear a civil violation, but it later repealed the provision. P.L. 2003, ch. 414, § A–2 (effective Aug. 31, 2004) (codified at 12 M.R.S.A. § 12356(2) (Pamph. 2003), *repealed by* P.L.2003, ch. 655, § B–238 (effective Aug. 31, 2004)). Presently, transporting a concealed carcass before tagging is a civil violation, 12 M.R.S. § 12351(2)(A) (2005), but it is a Class E crime if the defen-

dant has three prior violations within the past five years, 12 M.R.S. § 12351(2)(B) (2005).

5. The original uniform summons and complaint (USC) issued by the warden states that hunting without hunter orange clothing is a civil violation. However, the criminal complaint that replaced the USC charged the offense as a Class E criminal violation.

6. Section 7901–A(6)(A)(2) was later repealed. P.L.2003, ch. 414, § A–1 (effective Aug. 31, 2004). Hunting without hunter orange clothing is currently a civil violation, 12 M.R.S. § 11203(2)(A), but it is a Class E crime if the defendant has three prior convictions within the past three years, 12 M.R.S. § 11203(2)(B).

Perry's counsel responded, "No, just the one I brought up before." Apparently, that was a reference to his objection that the accomplice liability instruction was not generated by the evidence.

[¶ 14] When Perry objected to the accomplice liability instruction, it was on the ground that the evidence of night hunting did not generate the instruction. Perry now argues that the instruction was erroneous because it failed to specify that an intent to facilitate the crime is required for accomplice liability, and he argues that the instruction should have been limited to the night hunting charges. Because Perry did not specifically object to the instruction on those grounds, he did not properly preserve the objections, and, therefore, we review the instruction for obvious error. *See State v. Berry,* 1998 ME 113, ¶ 10, 711 A.2d 142, 145.

[¶ 15] When obvious error is the standard of review, an erroneous jury instruction will lead to the vacation of a conviction only if the "instruction constituted 'a seriously prejudicial error tending to produce manifest injustice.'" *State v. Powell,* 452 A.2d 977, 978 (Me.1982) (quoting *State v. Daley,* 440 A.2d 1053, 1055 (Me.1982)). To determine if an erroneous definition of an essential element constitutes obvious error, we look to whether there is "a reasonable possibility that an instruction correctly defining [the element] would have resulted in a different verdict." *State v. Walker,* 512 A.2d 354, 356 (Me. 1986). If we cannot say that the jury would not have resolved the issue differently if it had been correctly instructed, we must vacate. *Powell,* 452 A.2d at 978.

[¶ 16] We consider first Perry's contention that the evidence did not generate the accomplice liability instruction. When the evidence puts the defendant at the scene of a crime, "accomplice liability may attach upon the State's proof of any conduct promoting or facilitating, however slightly, the commission of the crime." *State v. Pheng,* 2002 ME 40, ¶ 9, 791 A.2d 925, 927. There has to be some evidence that the defendant was present and aided in the commission of the crime. *See State v. Wright,* 662 A.2d 198, 202 (Me.1995). Insofar as there was error in giving an accomplice liability instruction that applied to all offenses, we do not find that the error was so seriously prejudicial that it tended to produce a manifest injustice.

[¶ 17] Next we analyze Perry's contention that the accomplice liability instruction, which failed to include the element of intent, was obvious error and requires vacation of the convictions. As discussed below, we conclude that the erroneous instruction was not seriously prejudicial with the exception of the conviction for having a loaded firearm in a vehicle on November 27.

[¶ 18] The convictions from November 4, 2003, concerning the bobcat, were offenses that did not involve the conduct of anyone other than Perry. The evidence is that Perry shot at the bobcat after he loaded his firearm in his truck. Perry admitted during his testimony that he had shot at the bobcat so that it would jump and leave a print that he could check. The evidence demonstrated that Perry committed the November 4 violations himself. The criminal liability was based on his personal actions. The accomplice instruction was superfluous, and it was not seriously prejudicial.

[¶ 19] The same is true with the commissioner's rule violation, that is, hunting an antlerless deer without a permit. The evidence was that Perry, and not someone else, shot at an antlerless deer. Likewise, the offense of illegal possession of a deer killed at night was based on the evidence that two others loaded the deer into Perry's truck at Perry's express direction. These two offenses were based

on Perry's own actions. The accomplice liability instruction did not seriously prejudice Perry.

[¶ 20] The elements of the offense of unlawfully hunting bear with dogs are: (1) hunting; (2) for bear; (3) while alone or with others; and (4) with more than four dogs at any one time. 12 M.R.S.A. § 7452(1). There was evidence that Perry was hunting bear with other people and that the whole group used more than four dogs. Under the statute, every person in the hunting party was equally guilty of hunting with more than four dogs as the statute does not make only the person who released the dogs guilty. The accomplice liability instruction added nothing to this offense and did not seriously prejudice Perry.

[¶ 21] The driving deer statute, 12 M.R.S.A. § 7458(10), is similar in that it places criminal liability on anyone who "participates in a hunt for deer, during which an organized or planned effort is made to drive deer." Perry testified that he participated in a hunt for deer on November 27, 2003, but that in his mind, what the hunting party did that day did not constitute driving deer. The warden, on the other hand, testified that Perry and the rest of the hunting party were driving deer. Again, the accomplice liability instruction was superfluous.

[¶ 22] Further analysis, however, is necessary with regard to Perry's conviction for having a loaded firearm in a motor vehicle on November 27, 2003. That charge arose from the shooting of a deer at night by someone else. The elements of the offense are: (1) having "any firearm with a cartridge or shell in the chamber or in an attached magazine, clip or cylinder"; and (2) "[w]hile in or on a motor vehicle." 12 M.R.S.A. § 7406(9–A). There was evidence that the hunter who shot the deer loaded his firearm while in Perry's truck. Perry himself did not load the firearm or

have physical possession of it. An accomplice liability instruction was appropriate based on these facts, which included Perry telling the warden to have his rifle "ready" in the presence of the hunter.

[¶ 23] We agree with Perry, however, that the instruction was erroneous because it did not state that intent to facilitate the crime is an element of accomplice liability. The accomplice liability statute provides in pertinent part that "[a] person is an accomplice of another person in the commission of a crime if:"

A. With the intent of promoting or facilitating the commission of the crime, he solicits such other person to commit the crime, or aids or agrees to aid or attempts to aid such other person in planning or committing the crime. A person is an accomplice under this subsection to any crime the commission of which was a reasonably foreseeable consequence of his conduct.

17–A M.R.S. § 57(3)(A) (2005).

[¶ 24] The court's instruction did not accurately represent the statutory definition of accomplice liability because it failed to mention the intent element. The *Maine Jury Instruction Manual* warns that "any instruction on accomplice liability must avoid any suggestion that a conviction could be obtained by any lesser mental state." Alexander, *Maine Jury Instruction Manual* § 6–31 at 6–44 to 6–45 cmt. (4th ed.2005).

[¶ 25] There is a reasonable possibility that the outcome on this charge would have been different with a correct accomplice liability instruction. Because of the reasonable possibility that Perry would have been acquitted if the instruction correctly defined accomplice liability, *see Walker*, 512 A.2d at 356, the erroneous instruction was both obvious and prejudicial. Therefore, we vacate the conviction

for having a loaded firearm in a motor vehicle on November 27, 2003.

D. The Undercover Warden's Illegal Conduct

 [¶ 26] Perry contends that the undercover warden's conduct in violating the fish and wildlife laws on numerous occasions, in drinking alcoholic beverages with the targets of his investigation, and in inciting participants to commit illegal acts was so outrageous as to violate notions of fundamental fairness. The court instructed the jury on entrapment, and the jury obviously found that Perry had a predisposition to commit those crimes for which he was convicted. The remedy that Perry requests for the warden's conduct is a vacation of his convictions and a remand for the dismissal of all of the charges against him.

[¶ 27] We have acknowledged that there may be cases in which government officers are so enmeshed in the criminal activity that the prosecution of another participant in that activity might be "repugnant to our concept of criminal justice." *State v. Smith*, 615 A.2d 1162, 1165 (Me.1992). The warden's activities here were clearly designed to ingratiate himself with Perry and Perry's friends and clients so that he could personally observe violations of the fish and wildlife laws. His testimony was replete with instances of how he attempted to avoid committing a crime personally. We are not convinced that the warden's conduct was so outrageous that due process requires a dismissal of all charges.

The entry is:

Judgment vacated on convictions for a guide license violation on September 15 and hunting without hunter orange clothing on November 4 and remanded for a dismissal of these counts. Judgment vacated on conviction for having a loaded firearm in a motor vehicle on November 27 and remanded for further proceedings consistent with this opinion. Judgment affirmed as to convictions on all other counts but remanded for resentencing.