2007 ME 155

**STATE of Maine**

**v.**

**Rosemary PEASE.**

and

**State of Maine**

**v.**

**Brian Betterton.**

Supreme Judicial Court of Maine.

Submitted on Briefs: Nov. 27, 2007.

Decided: Dec. 27, 2007.

Michael E. Povich, District Attorney, St. Ellsworth, ME, for the State.

Steven A. Juskewitch, Esq., Ellsworth, ME, Eric Columber, Esq., Roy, Beardsley, Williams & Granger, Ellsworth, ME, for the defendants.

Panel: SAUFLEY, C.J., and CLIFFORD, ALEXANDER, LEVY, SILVER, and GORMAN, JJ.

ALEXANDER, J.

[¶ 1] Rosemary Pease and Brian Betterton appeal from the sentences imposed in Superior Court (Hancock, *Mead, J.*) after they entered no contest pleas to theft by unauthorized taking (Class B), 17–A M.R.S.A. § 353(1)(A), (B)(1) (2004).[1] They

---

1. Title 17–A M.R.S.A. § 353(1)(A) has since been amended. P.L. 2005, ch. 199, § 4 (effective Sept. 17, 2005) (codified at 17–A M.R.S. § 353(1)(A) (2006)).

challenge the legality of the restitution order, arguing that the court violated 17–A M.R.S. §§ 1323, 1325, 1326–A (2006) by failing to: (1) make a reasonable inquiry into the victim's financial loss, and (2) find that they had the financial capacity to pay restitution. Additionally, Betterton argues that the court violated his right to due process by refusing to admit his medical records and refusing to accept his offer to testify regarding his health and economic circumstances.

[¶ 2] Because the record reflects that, prior to sentencing, Betterton was given ample opportunity to make a statement and present evidence, we address only the restitution issue. We vacate the restitution order and remand only for the court to specify the time and method of payment pursuant to 17–A M.R.S. § 1326–A. In all other respects, we affirm.

## I. CASE HISTORY

[¶ 3] At a bank foreclosure auction in August 2004, the victim purchased the house where Pease was residing and took action to evict her.[2] Before Pease left the house, she and Betterton removed a large amount of property and fixtures, including countertops, a furnace, some plumbing fixtures, and several appliances. After informal efforts to obtain return of the property failed, Pease and Betterton were indicted for the offense of theft by unauthorized taking, Class B. In January 2006, both defendants entered pleas of no contest based on a plea agreement with the State. According to the plea agreement, the State would reduce the Class B charge to a Class D charge if the defendants paid $8600 in restitution by the time of their sentencing. If the defendants did not pay, their Class B charge would stand and their plea would be con-

sidered an open plea to the felony. The court accepted both pleas, found the defendants guilty, and continued sentencing for one year.

[¶ 4] The court held the sentencing hearing in March 2007. By then neither defendant had paid any of the $8600. The court proceeded to sentence the defendants on an open plea to Class B theft. The State made no specific recommendation as to a jail sentence, but requested a restitution order for $19,809.33, which was the amount the insurance company paid the victim, plus the victim's $500 deductible. The State described the type of property the defendants took—the furnace, countertops, plumbing fixtures, and appliances—and offered a photocopy of the check as evidence of the amount the insurance company paid the victim for his loss. The State noted that the $8600 restitution amount was negotiated, as part of the misdemeanor plea, and that the real value of the victim's loss was the $19,809.33.

[¶ 5] Pease, age fifty-three at the sentencing hearing, asserted that she could pay no restitution because she was disabled and her only income was disability payments. Betterton, age forty-two at the sentencing hearing, claimed that he was unable to work because of a heart condition. However, he did indicate that he might be able to pay a modest restitution amount of $2500 or $3000. The defendants did not address how, with their claimed incapacities, they had been able to remove countertops, plumbing fixtures, a furnace, and large appliances from the home and transport them to some other location.

[¶ 6] After giving each defendant ample opportunity to be heard and to present any evidence, the court proceeded to address sentencing. The court observed that

2. The record is not clear as to whether Betterton was also living at the house.

both defendants appeared to be "able bodied," but it recognized that both defendants were disabled in some fashion and living under "very dire circumstances." The court also noted that in the past it had ordered restitution from defendants with very limited work capacity.

[¶ 7] The court then sentenced each defendant to two and one-half years at the Department of Corrections, with all but sixty days suspended, and probation for two years with special conditions. The court also ordered the defendants, jointly and severally, to pay restitution up to $19,809.33 according to a schedule to be set by the probation officer.

[¶ 8] Both defendants filed timely appeals of their sentences. Pursuant to M.R.App. P. 20, leave to appeal sentence was granted.

## II. LEGAL ANALYSIS

[¶ 9] If we determine that a restitution order is improper, we must "remand the case to the court that imposed the sentence for any further proceedings that could have been conducted prior to the imposition of the sentence under review and for resentencing on the basis of such further proceedings...." 15 M.R.S. § 2156(1–A) (2006).

■■■ [¶ 10] From the record, it appears that the court conducted a proper and sufficient inquiry into the amount of the victim's financial loss resulting from the defendants' criminal conduct, pursuant to 17–A M.R.S. § 1323(1) (2006). *See State v. Walker,* 675 A.2d 499, 500–01 (Me. 1996). The court also properly considered the defendants' ability to pay restitution pursuant to 17–A M.R.S. § 1325(1)(C) & (D) (2006). The court was not required to believe the defendants' claims of no capacity or limited capacity to pay restitution. The court may consider but disbelieve

claims to support a particular point, even if that testimony or claim is not directly contradicted. *See Dionne v. LeClerc,* 2006 ME 34, ¶ 15, 896 A.2d 923, 929; *In re Fleming,* 431 A.2d 616, 618 (Me.1981). Here the court noted that the defendants, age forty-two and fifty-three, appeared "able bodied" and concluded that the defendants had failed to demonstrate present and future incapacity to pay restitution. *See State v. Berube,* 1997 ME 165, ¶¶ 19–20, 698 A.2d 509, 515–16 (stating that defendant has the burden to demonstrate that restitution ordered would create excessive financial hardship).

■■■ [¶ 11] When payment of restitution is ordered by the court, "the time and method of payment or of the performance of the services must be specified." 17–A M.R.S. § 1326–A. Although the court's standard form, entitled "Conditions of Probation," allows the court to order an amount of restitution to be paid "on a schedule set by the court or your probation officer," we have held that section 1326–A prohibits the sentencing court from deferring the determination of time and method of payment to a later time. *Berube,* 1997 ME 165, ¶ 20, 698 A.2d at 516; *State v. Lewis,* 1998 ME 83, ¶ 10, 711 A.2d 119, 124. The sentencing court may leave the determination of the details of a given restitution order to the probation officer as long as doing so does not require the exercise of any discretion. *See Berube,* 1997 ME 165, ¶ 20 n. 9, 698 A.2d at 516.

[¶ 12] Here, the court ordered the defendants, jointly and severally, to pay restitution up to $19,809.33 according to a schedule to be set by the probation officer. In doing so, the court stated that "I invest in the probation officer with considerable discretion" to determine how much of the $19,809.33 the defendants can pay and when they must pay.

[¶ 13] The court's action, leaving to the probation officer's discretion the time and method of payment of restitution, was a considerate attempt to address a dilemma that sentencing courts often face in high restitution cases: Defendants who present at sentencing as having little or no current capacity to pay restitution, but with the court viewing the defendants as "able bodied" and perhaps having a future capacity to pay a considerable amount of restitution. However, the present restitution statute, section 1326–A, requires that the court's restitution order specify the "time and method of payment." It does not permit delegation of sentencing authority to set time and method of payment to the probation officer. Accordingly, the matter must be remanded for the court to set a schedule for the time and method of payment of restitution.

The entry is:

Sentences vacated. Remanded to the Superior Court to set the time and method of payment of restitution. In all other respects, the sentences are affirmed.