2010 ME 40

**STATE of Maine**

v.

**Gerald P. NELSON Jr.**

Supreme Judicial Court of Maine.

Argued: April 14, 2010.
Decided: May 11, 2010.

James A. Billings, Esq. (orally), Lipman, Katz & McKee, P.A., Augusta, ME, for Gerald P. Nelson Jr.

Janet T. Mills, Attorney General, Leanne Robbin, Asst. Atty. Gen. (orally), Office of the Attorney General, Augusta, ME, for the State of Maine.

Panel: SAUFLEY, C.J., and LEVY,* SILVER, MEAD, and GORMAN, JJ.

SILVER, J.

[¶ 1] Gerald P. Nelson Jr. appeals from a judgment entered in the Superior Court (Kennebec County, *Horton, J.*) convicting him of two counts of theft by deception (Class B and C), 17–A M.R.S.A. § 354 (1983 & Supp.2002); 17–A M.R.S.A. § 362(2)(A) (Supp.2002) (Class B); 17–A M.R.S.A. § 362(3)(A) (Supp.2000) (Class C),[1] and sentencing him, in part, to the payment of restitution pursuant to 17–A M.R.S. § 1325 (2009). We affirm the conviction on Count I. Because we conclude that the court's unobjected to instruction to the jury recited an incorrect statutory minimum value of the theft on Count II, we must vacate the conviction on Count II. Because the sentences for Count I and Count II were intertwined, we remand for re-sentencing.

## I. PROCEDURAL BACKGROUND

[¶ 2] Nelson was charged with two counts of theft by deception, 17–A M.R.S.A. § 354,[2] for conduct connected to his operation of a logging business between July 2000 and January 2003. Count I charged Nelson with obtaining permission to cut wood based on his deceitful assertions to landowners that he intended to compensate them, and Count II charged Nelson with misrepresenting to Sappi Fine Paper (Sappi) the source location of wood that he sold to them, in order to be compensated at a higher rate.

[¶ 3] A six-day jury trial was held in June 2008, and the jury returned a guilty verdict on both counts. Nelson was sentenced to five years of imprisonment for Count I, and to three years of imprisonment, all suspended, with two years of probation, for Count II, to be served consecutively to the sentence for Count I. The probation conditions included the payment of restitution to be determined after the hearing. Following a restitution hearing, the court issued an order requiring Nelson to pay restitution to ten landowners in the aggregate amount of $94,558.69. Under the order, the restitution obligation will commence at the time of Nelson's release, with payments to be made according to a schedule set by Nelson's probation officer and to continue after the conclusion of Nelson's probation.

## II. DISCUSSION

[¶ 4] Nelson claims four points of error on appeal. He argues that the court

---

* Although not available at oral argument, Justice Levy participated in this opinion. See M.R.App. P. 12(a) ("A qualified justice may participate in a decision even though not present at oral argument.").

1. The same theft by deception statute, 17–A M.R.S.A. § 354 (1983 & Supp.2002) was applicable to the conduct under both counts. However, the offense levels were classified under a separate statutory provision, and 17–A M.R.S.A. § 362(2)(A) (Supp.2002) applies to the Class B offense, while 17–A M.R.S.A. § 362(3)(A) (Supp.2000) applies to the Class C offense. Section 362 has since been repealed, and the value element has been incorporated into the theft by deception provision. *See* P.L. 2001, ch. 383, §§ 34, 52 (effective Jan. 31, 2003).

2. Title 17–A M.R.S.A. § 354 (1983 & Supp. 2002) provided:

> 1. A person is guilty of theft if he obtains or exercises control over property of another as a result of deception and with an intention to deprive him thereof.
> 2. For purposes of this section, deception occurs when a person intentionally:
> A. Creates or reinforces an impression that is false and that the person does not believe to be true . . . ;
> B. Fails to correct an impression which is false and which he does not believe to be true, and which:
> (1) He had previously created or reinforced.

abused its discretion by: (1) denying his motion for a mistrial after a witness referenced an injunction that had been excluded from evidence; (2) admitting mill "scale slips" as a business record under M.R. Evid. 803(6); and (3) improperly instructing the jury on the value of the thefts that it must find. Nelson additionally argues that the restitution order violates 17–A M.R.S. § 1325.

## A. Mistrial Motion

[¶ 5] In a pre-trial motion, the State requested the admission of two injunctive orders entered in a prior civil case. The injunctions prevented Nelson from soliciting landowners for timber, required written timber contracts containing a number of disclosures, and imposed price guidelines. The court excluded the orders based on its concern that they might unfairly prejudice the jury, but allowed the parties to discuss aspects of the civil case other than the result. Despite that order, Nelson's ex-wife Mary Ellen Siler testified that "[Nelson] was never allowed to cut any wood at all in the State of Maine, by the civil matter that was against him." Nelson objected and moved for a mistrial. The court sustained his objection, but denied the mistrial motion. The court then instructed the jury to disregard the statement and explained why the outcome of the civil case was irrelevant.

[¶ 6] We review the denial of a mistrial for abuse of discretion and overrule such a denial "only in the event of exceptionally prejudicial circumstances or prosecutorial bad faith." *State v. Cochran*, 2000 ME 78, ¶ 28, 749 A.2d 1274, 1281 (quotation marks omitted). "[T]he trial court's determination of whether exposure to potentially prejudicial extraneous evidence would incurably taint the jury verdict or whether a curative instruction would adequately protect against consider-

ation of the matter stands unless clearly erroneous." *State v. Ardolino*, 1997 ME 141, ¶ 18, 697 A.2d 73, 79.

[¶ 7] The court did not abuse its discretion in denying Nelson's motion for a mistrial. The State did not ask questions intended to elicit a prejudicial response, and the court gave adequate curative instructions to the jurors to disregard the reference. *See State v. Winslow*, 2007 ME 124, ¶ 20, 930 A.2d 1080, 1086. We "presume that the jury heeds the court's instruction," *Ardolino*, 1997 ME 141, ¶ 18, 697 A.2d at 79, and "[k]nowledge by jurors that a prior trial had occurred does not *per se* mean they cannot give a fair trial to an accused," *State v. Bridges*, 2004 ME 102, ¶ 10, 854 A.2d 855, 858 (quotation marks omitted). Under these circumstances, "[t]he court correctly concluded that a curative instruction was adequate to protect against improper consideration of the reference" by the jury, and did not abuse its discretion in denying the mistrial motion. *See id.* ¶ 12, 854 A.2d at 859.

## B. Admission of Scale Slips

[¶ 8] The court admitted, over Nelson's objection, an exhibit consisting of scale slips produced by Sappi from its computer database that the State argued showed the quantity, type, and reported origin location of wood that Nelson's drivers delivered to the mill. To lay a foundation for the admission of the documents, the State presented the testimony of Sappi's scaling quality manager, who trains and supervises the employees entering information onto scale slips and who helped to identify the scale slips included in the exhibit.

[¶ 9] We review the trial court's decision on the admissibility of evidence for abuse of discretion or clear error. *See State v. Willette*, 2002 ME 165, ¶ 11, 809

A.2d 617, 621. To admit a business record, which is an exception to the hearsay rule, the party offering the evidence must lay a proper foundation by presenting testimony of "the custodian or other qualified witness" showing that:

> (1) the record was made at or near the time of the events reflected in the record by, or from information transmitted by, a person with personal knowledge of the events recorded therein;
> (2) the record was kept in the course of a regularly conducted business;
> (3) it was the regular practice of the business to make records of the type involved; and
> (4) no lack of trustworthiness is indicated from the source of information from which the record was made or the method or circumstances under which the record was prepared.

*State v. Radley,* 2002 ME 150, ¶ 14, 804 A.2d 1127, 1131–32 (paraphrasing M.R. Evid. 803(6) (quotation marks omitted)). Nelson concedes criteria two and three.

[¶ 10] The witness was "intimately involved in the daily operation of the [business]" and his testimony "showed the firsthand nature of his knowledge," and therefore he was a qualified witness. *See Ne. Bank & Trust Co. v. Soley,* 481 A.2d 1123, 1126 (Me.1984) (quotation marks omitted). Additionally, the first *Radley* criterion was met by the State's demonstration through the witness's testimony that the scale slips were created by Sappi employees at the time of delivery of the wood, with the employees entering information based on firsthand observations and trip tickets submitted by drivers. *See Radley,* 2002 ME 150 ¶ 14, 804 A.2d at 1131.

[¶ 11] Further, there are no indicia that the scale slips are unreliable. Nelson argues that because the slips, which were stored in a computer database, were printed long after the entry of the data and for purposes of litigation, they are untrustworthy. However, Nelson "improperly focuses on the time of printing the records rather than the entry of the raw data." *United Air Lines, Inc. v. Hewins Travel Consultants, Inc.,* 622 A.2d 1163, 1168 (Me. 1993). The witness testified about the data collection process at the time of the deliveries, explained that the record-keeping system had been tested for accuracy on several occasions, and stated that he had always found the scale slip entries to be accurate. The court did not err or abuse its discretion in admitting the scale slips as a business record.

### C. Statutory Minimum Value of Thefts

[¶ 12] Nelson contends that the jury instructions were erroneous because the jury should have been required to specifically find that the value of wood taken from each landowner and the mill was precisely the same as the value alleged in the indictment. Nelson also contends that the jury instruction for Count II incorrectly stated that the jury must find a theft of property valued in excess of $1000 in order to convict Nelson of Class C theft under Count II, when the statute applicable to Nelson, 17-A M.R.S.A. § 362(3)(A) (Supp.2000), instead required a minimum value of $2000.

[¶ 13] "We review [ ] jury instructions in their entirety to ensure that they informed the jury correctly and fairly in all necessary respects of the governing law." *State v. Bouchard,* 2005 ME 106, ¶ 28, 881 A.2d 1130, 1138 (quotation marks omitted). The court did not err in instructing the jury that the State must prove that Nelson committed theft of property with values above the statutory minimums, rather than requiring it to find the specific

values alleged in the indictment. *See State v. Bruzzese*, 2009 ME 61, ¶ 14, 974 A.2d 311, 314 (holding that the jury had sufficient evidence to support its finding of theft of property above the minimum value required by the statute). The court did, however, commit error in its misstatement of the statutory minimum theft for Count II.

[¶ 14] It appears that neither the State nor Nelson was aware of the mistake in the elements of the Count II theft charge, and neither brought the issue to the attention of the court. Because Nelson did not object specifically to the court's misstatement of the statutory minimum value of theft, the instruction is reviewed for obvious error. *See* M.R. Crim. P. 52(b); *State v. Perry*, 2006 ME 76, ¶ 14, 899 A.2d 806, 813. An erroneous definition of an essential element is obvious error if there is "a reasonable possibility that an instruction correctly defining the element would have resulted in a different verdict." *Perry*, 2006 ME 76, ¶ 15, 899 A.2d at 813 (quotation marks omitted); *accord State v. Powell*, 452 A.2d 977, 978 (Me.1982) ("We are not called upon to decide the likelihood of a jury result if properly instructed but whether the jury *could* have resolved the issue differently.").

[¶ 15] Count II of the indictment charged Nelson with Class C theft by deception. The statute in effect at the time of the conduct stated that a theft offense is a Class C crime if "[t]he value of the property or services is more than $2,000 but not more than $10,000." 17–A M.R.S. § 362(3)(A) (Supp.2000).[3] Because the court misstated the value element of the Count II offense as a $1000 minimum instead of $2000, "[t]he court's instruction did not accurately represent the statutory definition." *See Perry*, 2006 ME 76, ¶ 24, 899 A.2d at 814. The State alleged a value of $6602.40 for that Count, but the jury could have chosen to believe all or only part of the testimony and evidence supporting that value, and therefore there is a reasonable possibility that the outcome on Count II would have been different with a correct instruction. *See id.* ¶ 25, 899 A.2d at 814. For these reasons, we vacate the judgment of conviction on Count II.

## D. Restitution

[¶ 16] A court is authorized to order restitution "as compensation for economic loss." 17–A M.R.S. § 1325(1). "[I]t is the burden of the State to produce evidence as to the extent of the victim's loss, and to prove, by a preponderance, a causal connection between the loss and the offender's conduct." *State v. Berube*, 1997 ME 165, ¶ 19, 698 A.2d 509, 516 (citation omitted).

[¶ 17] Here, the State met its burden to prove the $94,558.69 value. To calculate the amount of restitution, the State presented the testimony of a forester with more than twenty-nine years of experience in the forestry industry. The witness testified as to three methods for calculating the "stumpage value" of the wood taken, which is the amount that would have been paid to the landowners for the wood in a legal transaction. The witness applied the method of general usage that stumpage value generally equals one-third of the price paid by the mill. This method, he testified, is a reasonable approximation, and to the extent that the method is imprecise, it is a "conservative" estimate. As counsel for Nelson acknowledged at argument, any error in estimating the value of

---

**3.** Title 17–A M.R.S.A. § 362(3)(A) (Supp. 2000) was amended effective September 21, 2001, to reduce the threshold value of a Class C theft from $2000 to $1000. See P.L. 2001, ch. 389, § 3 (codified at 17–A M.R.S.A. § 362(3)(A) (Supp. 2002)).

the timber was in Nelson's favor. Under these facts, the State sufficiently proved the victims' loss by a preponderance of the evidence.

 [¶ 18] Additionally, the court adequately considered Nelson's ability to pay, and Nelson has not shown that he established his financial incapacity as a matter of law. *See* 17–A M.R.S. § 1325(1)(C), (2)(D), (4). The court heard evidence that Nelson was forty-two years old, had previously owned and operated a successful business involving a number of transferable skills, and that he suffered from no disability. "The court was not required to believe [his] claims of no capacity or limited capacity to pay restitution. The court may consider but disbelieve claims ... even if that testimony or claim is not directly contradicted." *State v. Pease*, 2007 ME 155, ¶ 10, 940 A.2d 189, 191. Under these facts, the court did not err as a matter of law in finding that restitution would not cause an excessive financial hardship, and we uphold the restitution order.[4]

The entry is:

Judgment of conviction as to Count I affirmed.

Judgment of conviction as to Count II vacated.

Remanded for re-sentencing on Count I and further proceedings consistent with this opinion.

---

4. The restitution order is deficient in one regard, in that it fails to specify the time and method of payment as required by 17–A M.R.S. § 1326–A (2008). *See State v. Pease*, 2007 ME 155, ¶ 13, 940 A.2d 189, 192 (stating that the statute "does not permit delegation of sentencing authority to set time and method of payment to the probation officer"). However, neither of the parties raised this issue on appeal, and the statute has since been amended to state that the time and method of payment must be determined by the Department of Corrections while an offender is in custody or under probation. P.L. 2009, ch. 94, § 3 (effective Sept. 12, 2009). Therefore we find this error harmless. *See* M.R. Crim. P. 52(a).