MAINE SUPREME JUDICIAL COURT                          Reporter of Decisions
Decision:     2019 ME 7
Docket:       Ken-18-152
Argued:       November 6, 2018
Decided:      January 17, 2019

Panel:        SAUFLEY, C.J., and ALEXANDER, MEAD, GORMAN, JABAR, HJELM, and HUMPHREY, JJ.


STATE OF MAINE

v.

WENDY L. GAGNE


ALEXANDER, J.

[¶1] Wendy L. Gagne appeals from an order to enforce payment of restitution entered by the Superior Court (Kennebec County, *Stokes, J.*) following a hearing on a motion to enforce payment of a restitution obligation originally imposed as part of a 2003 sentence imposed by the court (*Studstrup, J.*).  Because the motion court erred in imposing the burden on Gagne to prove the current balance of the court-ordered restitution for the victim's uncompensated losses—information more accessible to the State because it relates to or is available from the victim of the crime—we vacate and remand for a further hearing.

## I. CASE HISTORY

[¶2]  The relevant facts are drawn from the docket entries, the trial court's file and the record of the motion hearing.

[¶3]  On October 10, 2002, Gagne waived indictment and was charged by information with theft by deception (Class B), 17-A M.R.S. § 354(1), (2)(A) (2017).[1]  Maine Pulp and Paper Association (MPPA), Gagne's employer, was identified as the victim of the theft.  Gagne initially pleaded not guilty, but on October 30, 2002, she changed her plea to guilty of the Class B theft, with the case continued for sentencing.

[¶4]  Following her plea, but prior to sentencing, Gagne and her husband, as part of an effort to compensate MPPA for losses occasioned by the theft, granted mortgages to MPPA on properties they owned located in Augusta, Gardiner, and Pittston.

[¶5]  Sentencing occurred on February 6, 2003.  On Gagne's plea of guilty to theft by deception (Class B), the court sentenced Gagne to the Department of Corrections for a term of seven years, with all but thirty months suspended, to be followed by probation for a term of four years.  As part of the judgment,

---

[1]  The crime at issue was committed throughout the years of 1997-2002.  The theft statute applicable during that time does not differ materially from the current theft statute in any way relevant to this appeal. *Cf.* 17-A M.R.S.A. § 354 (1983 & Supp. 2002); 17-A M.R.S.A. § 354 (1983).

Gagne was ordered to pay restitution in the amount of $400,000. Gagne's conditions of probation separately required that she pay a "maximum" amount of restitution of $400,000 for the benefit of MPPA.

[¶6] In March 2009, around the time when Gagne's term of probation would have been scheduled to end, the State filed a motion to revoke Gagne's probation because the ordered restitution had not been paid in full. Following a hearing on December 10, 2009, the court (*Mills, J.*) denied the motion. The facts related to the 2009 hearing are addressed in the 2017 motion court's findings, stated below. The record does not indicate that Gagne's term of probation was extended beyond its scheduled expiration.

[¶7] In June 2016, the State filed a motion to enforce payment of restitution. In January 2017, Gagne filed a motion to dismiss the motion to enforce. The grounds for the motion to dismiss were (1) res judicata based on the 2009 denial of the motion to revoke probation for nonpayment of restitution and (2) the early 2017 dissolution of MPPA. The motions were heard on April 28, 2017, and decided by an opinion (*Stokes, J.*) dated May 4, 2017. In that decision, the court ordered Gagne to pay $200 per month beginning in May and indicated that a further hearing would be scheduled for June to determine the amount of any credit to be given to Gagne for any funds

4

recovered by MPPA from insurance or foreclosure of the three mortgages given by Gagne and her husband.

[¶8] Gagne filed an appeal from the May 4, 2017, order. We dismissed that appeal as interlocutory because the order contained a footnote stating that the court had "scheduled a follow-up hearing" in case there was a "need to take additional evidence relevant to the issue of whether the victim has received compensation from a collateral source or has received any proceeds from the mortgaged real estate." After remand, however, the motion court indicated that its decision was final and that no further hearing would be scheduled. In April 2018, Gagne filed a timely notice of appeal from the motion court's final order. *See* 15 M.R.S. § 2115 (2017); M.R. App. P. 2A, 2B.

[¶9] The relevant facts are outlined in the following findings of fact stated by the motion court. These findings are supported by competent evidence in the record. *See State v. Nisbet*, 2018 ME 113, ¶ 9, 191 A.3d 359.

> As part of the [2003] judgment and commitment the sentencing court ordered [Gagne] to make restitution in the amount of $400,000 for the benefit of the victim. As a condition of her probation, [Gagne] was ordered to pay restitution in the "maximum" amount of $400,000 for the benefit of the named victim.
>
> In his letter to the sentencing court, [MPPA's attorney] requested restitution for his client in the amount of $367,400, which represented the claimed theft of $400,000 minus payments

already made by [Gagne] to MPPA of $32,600. The State sought an identical amount of restitution. State's Exhibit 1 admitted at the hearing on April 28, 2017, reflects restitution payments made by [Gagne] while incarcerated and/or on probation totaling $15,317.39.

The court finds that the $400,000 restitution amount made part of [Gagne's] judgment and her probation, was intended to be a maximum amount before application of any cash payments made by [her] to the victim. Accordingly, the court further finds that [Gagne] has made cash payments totaling $47,917.39 ($32,600 + $15,317.39), leaving a balance of $352,082.61 prior to the application of any other credits to which [Gagne] may be entitled as discussed below.

In his letter to the sentencing court dated January 29, 2003, [MPPA's attorney] made reference to three (3) properties owned by [Gagne] in the central Maine area as to which [Gagne] (and apparently her husband) granted the victim mortgages. At the hearing on April 28, 2017, [Gagne] offered into evidence Defendant's Exhibits 1, 2 and 3 being recorded mortgage deeds on real estate in Pittston, Augusta and Gardiner, respectively, each dated January 31, 2003. [Gagne] testified that neither she nor her husband had any further ownership interest in these properties, and she had no knowledge or information about the properties at this time.

[Gagne] also raised the possibility that MPPA may have received an insurance settlement as a result of [Gagne's] employee theft, but no details of any such payment was provided to the court. During a hearing on the State's Motion to Revoke [Gagne's] Probation held on December 10, 2009 (Mills, J.), [Gagne] presented several letters her counsel had sent to [MPPA's attorney] in 2009 seeking information regarding any insurance payments and/or any proceeds obtained from the foreclosure of the 3 properties that were the subject of the mortgage deeds identified as Defendant's Exhibits 1, 2 and 3. . . . According to counsel for [Gagne], [MPPA's

attorney] did not provide any information regarding insurance payments or any proceeds from the three parcels of real estate.

. . . [Gagne's] obligation to make restitution was part of the sentencing judgment, in addition to being a condition of her probation. *See* 17-A M.R.S. §§ 1326-A, 1326-F and 1329.

. . . [Gagne] argues[] there is no longer a victim for whose benefit restitution must be paid. The Maine Criminal Code does not appear to clearly address this issue. Nevertheless, the court concludes that the corporation's entitlement to restitution from [Gagne] is an asset of the corporation and the directors of the corporation, as liquidating trustees, have the authority to dispose of any undistributed property of the corporation. *See* 13-B M.R.S. §§ 1111(2) and 1104(1)(D) & (2).

. . . .

. . . The court agrees that it is the State's initial burden of proving "the extent of the victim's loss." *State v. Berube*, 1997 ME 165, ¶ 19, 698 A.2d 509. On that issue, the State has satisfied its burden. In the court's view, *it is [Gagne's] burden to present evidence that she should be credited with additional amounts that may have been subsequently paid to the victim from a collateral source or from the sale of the three parcels of mortgaged real estate.* (Emphasis added.) [After this sentence, the court added a footnote stating that a "follow-up hearing" was set for June 30, 2017, "if there is a need to take additional evidence relevant to the issue of whether [MPPA] has received compensation from a collateral source or has received any proceeds from the mortgaged real estate."]

During her testimony on April 28, 2017, [Gagne] stated that based on her current income and financial resources she has the ability to pay $200 per month towards restitution.

Based upon the foregoing, the court finds that [Gagne] is in default of her obligation to make restitution and further finds that

the default was not inexcusable. IT IS ORDERED, that [Gagne] shall pay restitution for the benefit of the victim as follows: up to the amount of $352,082.61 in payments of $200 per month beginning in May, 2017, to be paid to the Office of the District Attorney . . . .

[¶10] Gagne contends that the motion court's conclusion that she was in default of her obligation to pay restitution was error for four reasons: (1) the court's 2009 ruling denying the State's motion to revoke Gagne's probation stands as res judicata on the issue of default; (2) 17-A M.R.S. § 1326-F (2017) does not apply because it was not in effect when the offense was committed during the years of 1997-2002; (3) the restitution order is not enforceable because MPPA has been dissolved; and (4) the court was not presented with sufficient evidence to conclude that any amount of restitution remained unpaid and, if so, in what amount.

## II. LEGAL ANALYSIS

[¶11] A court's factual findings are reviewed for clear error and the legal conclusions it derived from those findings are reviewed de novo. *See State v.*

8

*Milliken,* 2010 ME 1, ¶ 19, 985 A.2d 1152. Questions of statutory interpretation are reviewed de novo. *See State v. Knight*, 2016 ME 123, ¶ 9, 145 A.3d 1046.

A.    Res Judicata

[¶12]   Gagne contends that the motion court's 2009 ruling that denied the State's motion to revoke her probation is res judicata on the issue of whether she defaulted on her restitution obligation.

[¶13]   "The doctrine of res judicata prevents the relitigation of matters already decided: The law is plain that [parties] cannot again come forward in the same legal mission against the same parties to secure a remedy . . . previously denied." *Portland Water Dist. v. Town of Standish*, 2008 ME 23, ¶ 7, 940 A.2d 1097 (alterations in original).  Claim preclusion bars the relitigation of a claim if

>    (1) the same parties or their privies are involved in both actions;
>    (2) a valid final judgment was entered in the prior action; and
>    (3) the matters presented for decision in the second action were, or might have been, litigated in the first action.

*Johnson v. Samson Constr. Corp.*, 1997 ME 220, ¶ 6, 704 A.2d 866.  Although there was a final judgment entered in the prior proceeding in this action that involved the same parties, the issue litigated was whether Gagne had violated conditions of probation.   The Superior Court's action on the probation

revocation motion did not address or otherwise affect the stand-alone restitution provision in the judgment.

[¶14] As the legislative history of the probation laws indicates, the denial of the motion to revoke probation did not terminate Gagne's obligation to pay restitution. *See* Comm. Amend. A to L.D. 882, Summary, No. S-305 (118th Legis. 1997) ("The option [in the bill] of allowing the court to revoke the unpaid portion of the restitution in whole or in part has been removed as an apparent unconstitutional intrusion into the Governor's exclusive postconviction pardon power."); *see also State v. Hunter*, 447 A.2d 797, 799-803 (Me. 1982).

[¶15] Accordingly, principles of res judicata do not bar the pending enforcement action.

B. Application of Section 1326-F

[¶16] Gagne further contends that the court erred by applying section 1326-F, which provides that "[a]n offender is responsible for paying any restitution at the time the term of commitment to the Department of Corrections or period of probation is completed," and that because section 1326-F had not yet taken effect at the time of Gagne's offense, we should assume that the restitution provision of the judgment terminated upon her discharge from probation or Department of Corrections supervision. We

review questions of statutory interpretation de novo. *Knight*, 2016 ME 123, ¶ 9, 145 A.3d 1046.

[¶17]  Section 1326-F did not take effect until 2010—seven years after Gagne's conviction and eight years after the commission of the crime ended. *See* P.L. 2009, ch. 608, § 14 (effective July 12, 2010).  The legislative history of the restitution statutes provides guidance to determine whether section 1326-F could be applied in the present case.  The summary accompanying the legislative document from which section 1326-F was drawn states, in pertinent part:

> The bill enacts a new section that comprehensively addresses the situation in which an offender who has completed the term of commitment to the Department of Corrections or the period of probation still has not paid the restitution ordered by the court in full.  It provides notice to former Department of Corrections' clients still owing restitution that the duty to pay remains; requires that monetary compensation continue to be paid to the Department of Corrections; and requires that, unless otherwise modified by the court, the time and method of payment determined by the Department of Corrections during the former term of commitment or period of probation continues to control.

L.D. 1789, Summary (124th Legis. 2010).  We construe section 1326-F to confirm the then-existing continuing obligation to pay the restitution required by the judgment, to provide clarity to the then-existing practice, and to add the requirement of notice to obligors of their obligations.  The adoption of section

1326-F did not operate to terminate obligations to pay restitution imposed prior to its enactment. *C.f. Hunter*, 447 A.2d at 803 ("[T]he power to reduce an offender's sentence on the basis of his post-conviction behavior is not part of the traditional judicial power; rather, it is encompassed within the executive commutation power." (citation omitted)).

C.      Effect of Dissolution of MPPA

[¶18]   At the hearing, Gagne presented evidence that, in early 2017, MPPA filed Articles of Dissolution with the Maine Secretary of State. Gagne asserts that the restitution order is now unenforceable because there no longer exists a victim to be made whole.

[¶19]  "We examine [the restitution statutes] in the context of the entire statutory scheme." *State v. Kendall*, 2016 ME 147, ¶ 14, 148 A.3d 1230. Maine's restitution statutes are silent on the enforceability of an order of restitution owed to a corporate entity that is dissolved after the issuance of the order. As those statutes apply to other kinds of post-judgment changes in circumstances affecting the victim of a crime, however, they are explicit. If a victim who is a natural person dies after the court issues a restitution order, the State must forward restitution payments to the victim's estate. 17-A M.R.S. § 1326-C (2017). If the victim's location becomes unascertainable after the restitution

order is issued, the restitution payments must be forwarded to the State Treasurer as unclaimed property.  17-A M.R.S. § 1326-D (2017).

[¶20]  The combined effect of these statutes indicates a legislative resolve to require criminal offenders to pay restitution and not excuse that obligation because of post-judgment changes in the availability of the victim to receive that compensation.   The proper identification of the specific recipient—whether it be the victim's estate or a governmental entity—is a matter to be determined by the State pursuant to the restitution statutes and has no bearing on the defendant's underlying obligation to pay restitution.

[¶21]  There is no reason to treat the dissolution of a corporate victim differently given the Legislature's pronouncement that the purposes of restitution include rehabilitating the offender and "reinforc[ing] the offender's sense of responsibility for the offense."   17-A M.R.S. § 1321 (2017).   If the identity or location of a victim cannot be determined at the time of sentencing, the court remains authorized to impose a restitution order, after which the State must forward restitution payments to the county where the case is prosecuted.  17-A M.R.S. § 1324(2) (2017).  This demonstrates that even the initial issuance of an enforceable restitution order is not predicated on the availability of a victim.  The dissolution of MPPA as a corporate entity therefore

did not render the restitution order unenforceable. *See Allocca v. York Ins. Co. of Me.*, 2017 ME 186, ¶ 22, 169 A.3d 938 ("[T]he fundamental rule in statutory construction is that the legislative intent as divined from the statutory language controls the interpretation of the statute." (alteration in original)); *Damon v. S.D. Warren Co.*, 2010 ME 24, ¶ 10, 990 A.2d 1028 ("[W]here statutory construction is at issue, we construe a statute to give effect to legislative intent." (citation omitted)).

D.      Sufficiency of Evidence of Default

[¶22]   Gagne contends that the court erred by finding that she had defaulted on her obligation because the court was not presented with sufficient evidence to conclude whether any restitution remained unpaid and, if it did, in what amount.

[¶23]   On restitution issues, the State has the initial burden to prove the extent of a victim's loss by a preponderance of the evidence. *State v. Nelson*, 2010 ME 40, ¶¶ 16-17, 994 A.2d 808; *see also State v. Berube*, 1997 ME 165, ¶ 19, 698 A.2d 509 ("[I]t is the burden of the State to produce evidence as to the extent of the victim's loss and to prove, by a preponderance, a causal connection between the loss and the offender's conduct." (citations omitted)).

14

[¶24]  As we conclude below, the burden to establish the amount still owed remains with the State when it files a motion to enforce the restitution obligation.  In this case, the motion court found that Gagne had "made cash payments totaling $47,917.39 ($32,600 + $15,317.39), leaving a balance of $352,082.61 *prior to the application of any other credits to which [Gagne] may be entitled to* as discussed below."  (Emphasis added.)  The court went on to discuss the three properties that Gagne owned to which she and her husband granted MPPA mortgages, as well as a possible insurance settlement received by MPPA.  The court found that, although Gagne had sought information in 2009 regarding proceeds from the properties and possible insurance payments from MPPA's counsel, no information had been provided.

[¶25]  At the time of the order, the court scheduled a follow-up hearing for June 30, 2017, to take additional evidence regarding any compensation received by the victim from the proceeds of real estate sales or collateral sources.  This hearing never occurred—after her initial appeal was dismissed as interlocutory, the motion court determined that such a hearing "is not necessary at this time" and declared the restitution order final for purposes of the appeal.  Thus, the restitution order was made final without evidence of what amount, if any, Gagne should be credited for proceeds from the mortgage

foreclosures and real estate sales or other collateral sources—evidence which, the record indicates, would be in the possession of MPPA or its attorney.

[¶26] While the restitution chapter of the Criminal Code makes clear that the State has the burden to prove the amount of the victim's loss and the amount to be paid in restitution, *Nelson*, 2010 ME 40, ¶¶ 16-17, 994 A.2d 808, it is silent regarding the burden of proving past restitution payments when a default is alleged. Section 1325, which relates to criteria to be considered in authorizing a restitution order in a criminal judgment, states the following about burdens of proof, addressing only proof of incapacity to make payments:

> An offender who asserts a present or future incapacity to pay restitution has the burden of proving the incapacity by a preponderance of the evidence. On appeal of a restitution order, the offender has the burden of demonstrating that the incapacity was proven as a matter of law.

17-A M.R.S. § 1325(4) (2017). The statutes provide no further guidance regarding pre- and post-judgment burdens of proof in restitution matters. *See generally* 17-A M.R.S. §§ 1321 to 1330-C (2017).

[¶27] Our precedents provide helpful insights. In *State v. Bouchard*, 2005 ME 106, ¶ 22, 881 A.2d 1130, we specifically noted that it "remains for the Division of Probation and Parole to determine the actual amount that [the defendant] should be required to pay in restitution" and "[i]n making that

determination, the probation officer should consider any evidence that may be offered by [the defendant] as to how much of the [restitution amount] he used [for legitimate purposes] that would reduce the total amount of the [victim's] economic loss, and thus the amount of restitution to be paid." *See also Nelson*, 2010 ME 40, ¶ 17, 994 A.2d 808 (holding that the State met its burden of proving the amount of restitution to be ordered when it presented the testimony of a forester, whose testimony consisted of the method used to calculate the value of stolen wood, and that "to the extent that [his calculation] is imprecise, it is a 'conservative' estimate").

[¶28]  The State, directly or through access it may have to information from MPPA, is in the better position to determine the restitution or insurance payment information.  Applying our general civil principles on assignment of the burden of proof or persuasion, the State, on its motion to enforce, has the burden of persuasion.  *See Dowley v. Morency*, 1999 ME 137, ¶ 11, 737 A.2d 1061 ("[T]he party asserting the affirmative of controlling issues . . . bears the risk of nonpersuasion."); *Markley v. Semle*, 1998 ME 145, ¶ 5, 713 A.2d 945 ("The party who asserts the affirmative of the controlling issues in the case, whether or not he is the nominal plaintiff in the action, bears the risk of non-persuasion.").

[¶29]  Here, the State never met the burden assigned to it in *Nelson* and *Berube* to determine the amount of MPPA's loss, payments credited to cover that loss, and thus the remaining sum that Gagne should have been obligated to pay in restitution.  The burden cannot be shifted to Gagne by imposing a "not to exceed" restitution amount and then leaving it to her to learn from the now-dissolved MPPA the amounts that MPPA had recovered from insurance and from sale of her mortgaged properties—information Gagne had tried, without success, to obtain from MPPA in 2009.

[¶30]  The failure of proof by the party that bears the burden of proof usually requires, as a matter of law, entry of a judgment adverse to that party. *See Nelson*, 2010 ME 40, ¶¶ 16-17, 994 A.2d 808; *c.f. Ma v. Bryan*, 2010 ME 55, ¶ 6, 997 A.2d 755 (stating that it is the plaintiff's burden of proof to establish the elements of a cause of action).  Such a result should not obtain here, however, because neither the parties nor the court had the benefit of the clarification that we provide today, and as a result the State was not on proper notice that it was responsible for presenting evidence of the amount, if any, of restitution that remains due.

[¶31]  We therefore vacate the motion court's order and remand for a new hearing on the enforcement of the restitution obligation, with the State

having the burden to prove the restitution obligation remaining after receipt of payments directly from Gagne, proceeds from the foreclosure and sale of the mortgaged properties, and any proceeds from insurance.[2]

The entry is:

> Order granting the State's motion to enforce the payment of restitution vacated. Remanded for further proceedings as indicated in paragraph 31 of this opinion.

Robert E. Sandy, Jr., Esq. (orally), Sherman & Sandy, Waterville, for appellant Wendy L. Gagne

Maeghan Maloney, District Attorney, and Paul Cavanaugh II, Dep. Dist. Atty. (orally), Office of the District Attorney, Augusta, for appellee State of Maine

Kennebec County Superior Court docket number CR-2002-316
FOR CLERK REFERENCE ONLY

---

[2] These are the sources of satisfaction from collateral sources that have been suggested by the record. Our holding today, that the State bears the burden of proving the outstanding balance of a restitution obligation, should not be construed to mean that the State is required to account for any imaginable credit, but only for payments or credits from sources identified in the evidence.